Ashley I. Kissinger (SBN 193693)
*KissingerA@ballardspahr.com*
**BALLARD SPAHR LLP**
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.376.2407
Facsimile: 303.296.3956

Elizabeth L. Schilken (SBN 241231)
*SchilkenE@ballardspahr.com*
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

Michael R.9 O'Donnell
(admitted *pro hac vice*)
*MODonnell@RIKER.com*
Michael P. O'Mullan
(motion for admission *pro hac vice*
forthcoming)
*MOMullan@RIKER.com*
**RIKER DANZIG LLP**
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: 973.538.0800
Facsimile: 973.538.1984

*Attorneys for Defendant*
*Dun & Bradstreet Holdings, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Odette R. Batis, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>   v.<br><br>Dun & Bradstreet Holdings, Inc.,<br><br>              Defendant. | Case No. 3:22-cv-01924-MMC<br><br>**DUN & BRADSTREET HOLDINGS, INC.'S SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CIV. PROC. CODE §425.16 AND, IN THE ALTERNATIVE, MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Declaration of Karlos Palmer and Declaration of Ryan L. O'Neill, with Exhibits 1-5, submitted herewith*]<br><br>Hon. Maxine M. Chesney<br><br>Complaint Filed: March 30, 2022<br><br>Date:  August 5, 2022<br>Time: 9:00 a.m.<br>Location: San Francisco Courthouse<br>         Courtroom 7 – 19th Floor<br>         450 Golden Gate Avenue<br>         San Francisco, CA 94102 |

*Ballard Spahr LLP*
*2029 Century Park East, Suite 1400*
*Los Angeles, CA 90067-2915*
*Telephone: 424.204.4400*

## NOTICE OF MOTION AND MOTION:

PLEASE TAKE NOTICE that on **August 5, 2022, at 9:00 a.m.**, or such other date and time as may be ordered, in Courtroom 7 of the United States District Court for the Northern District of California, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Dun & Bradstreet Holdings, Inc. ("D&B") will and hereby does move this Court for an order striking the Complaint of Plaintiff Odette R. Batis ("Plaintiff") and awarding attorneys' fees and costs, or in the alternative dismissing the Complaint with prejudice for lack of subject matter jurisdiction and failure to state a claim on which relief may be granted. D&B makes this motion pursuant to Section 425.16 of the California Code of Civil Procedure ("C.C.P."), Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Civil Local Rule 7-2.

The Court should strike the Complaint with prejudice because: (1) Plaintiff's claims for violation of California Civil Code § 3344, common law misappropriation of name or likeness, and violation of California Business and Professions Code §17200, *et seq.* arise from D&B's acts in furtherance of the right of free speech under the United States Constitution and the California Constitution in connection with a public issue; and (2) Plaintiff cannot establish a probability of prevailing on her claims. C.C.P. § 425.16(b)(1).

California's right of publicity and misappropriation laws are content-based restrictions on speech, and the application of such laws to Defendant's use of Plaintiff's name and business contact information cannot survive strict scrutiny or intermediate scrutiny. Defendant's publication of Plaintiff's information in its database, and its free trial of the database, are protected by the First Amendment. Those uses are further protected by the "public affairs account" and public interest exemptions to Civil Code § 3344 and common law misappropriation claims. Plaintiff's statutory unfair competition claim, based on the same alleged facts as those underlying her claims for statutory right of publicity and common law misappropriation, fails for the same reasons. Finally, this Court lacks subject matter jurisdiction over this action because Plaintiff lacks Article III standing.

The Court should award D&B its attorneys' fees and costs that it incurred to prepare and file this Motion, and all fees incurred in defense of this action, pursuant to the mandatory fee provisions of C.C.P. § 425.16(c)(1) and Civil Code § 3344(a).

In the alternative, the Court should dismiss Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. Proc. 12(b)(1) because Plaintiff lacks Article III standing, and under Fed. R. Civ. Proc. 12(b)(6) because the Complaint fails to state a claim upon which relief can be granted. In that instance, the Court should award D&B its attorneys' fees and costs incurred in defense of this action pursuant to the mandatory fee provision of Civil Code § 3344(a).

The motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declarations of Karlos Palmer and Ryan L. O'Neill and exhibits, all pleadings and papers filed in this action, and such further evidence and argument as may be presented at, before, or after the hearing on this matter.

DATED: June 30, 2022

BALLARD SPAHR LLP

By: /s/ Ashley I. Kissinger

Ashley I. Kissinger
Elizabeth L. Schilken

DATED: June 30, 2022

RIKER DANZIG LLP

By: /s/ Michael R. O'Donnell

Michael R. O'Donnell
(admitted *pro hac vice*)
Michael P. O'Mullan
(motion for admission *pro hac vice*
forthcoming)

***Attorneys for Defendant
Dun & Bradstreet Holdings, Inc.***

# **TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT ....................................................................1

II.  STATEMENT OF FACTS ........................................................................2

    A.  D&B has been publishing business information for over one hundred and
       eighty years.. ...............................................................................2

    B.  D&B's Hoovers database is one of the company's flagship publications.. ...........3

    C.  Potential subscribers to Hoovers might see, during a free trial of Hoovers,
       Plaintiff's and putative class members' non-private business contact
       information.. ................................................................................3

    D.  Plaintiff does not allege this business contact information has commercial
       value independent of D&B's efforts to collect and publish it...............................5

III.  ARGUMENT ........................................................................................6

    A.  Plaintiff's complaint is subject to a special motion to strike under
       California's Anti-SLAPP statute...........................................................6

    B.  Plaintiff's publicity and misappropriation claims are barred by the First
       Amendment...................................................................................8

        1.  D&B's Hoovers publication is entitled to full constitutional
           protection. ..........................................................................8

        2.  Application of California's right of publicity laws to prohibit D&B
           from publishing business contact information in Hoovers without
           consent cannot satisfy strict scrutiny.........................................10

        3.  Nor can it satisfy intermediate scrutiny......................................11

        4.  Hoovers is constitutionally protected as an expressive and
           transformative work. ...........................................................11

        5.  Since Hoovers is protected by the First Amendment, so is D&B's
           free trial of that publication. ...................................................13

    C.  Plaintiff's claims also fail under state law. ..............................................14

        1.  D&B's use of Plaintiff's information falls within the public
           interest/public affairs exceptions to liability for right of publicity and
           misappropriation claims.. ......................................................14

        2.  Plaintiff's UCL claim falls with her statutory right of publicity and
            common law misappropriation claims.. .....................................17

    D.  Plaintiff does not have standing to bring her claims because she has not
       suffered "injury in fact."...................................................................18

IV.  CONCLUSION ....................................................................................22

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**Cases**

Ariix, LLC v. NutriSearch Corp.,
 985 F.3d 1107 (9th Cir. 2021) ................................................................................9

Barry v. State Bar of Cal.,
 2 Cal. 5th 318 (2017) .............................................................................................21

Bergen v. Martindale-Hubbell, Inc.,
 285 S.E.2d 6 (Ga. 1981) ..........................................................................................8

People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,
 104 Cal. App. 4th 508 (2002) ...............................................................................17

Bonilla v. Ancestry.com,
 2021 WL 5795306 (N.D. Ill. Dec. 7, 2021) .........................................................21

Boshears v. PeopleConnect, Inc.,
 2022 U.S. Dist. LEXIS 54277 (W.D. Wash. Mar. 25, 2022) ................................21

Brown v. Ent. Merchs. Ass'n,
 564 U.S. 786 (2011) ..............................................................................................10

C.M.D. v. Facebook, Inc.,
 2014 U.S. Dist. LEXIS 41371 (N.D. Cal. Mar. 26, 2014) ......................................0

Callahan v. Ancestry.com Inc. (Ancestry I),
 2021 U.S. Dist. LEXIS 37811 (N.D. Cal. Mar. 1, 2021) ......................................20

Callahan v. Ancestry (Ancestry II),
 2021 U.S. Dist. LEXIS 112036 (N.D. Cal. June 15, 2021) .........................19, 20, 21

Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,
 447 U.S. 557 (1980) ..............................................................................................11

Cher v. Forum Int'l, Ltd.,
 692 F.2d 634 (9th Cir. 1982) .................................................................................13

Cohen v. Facebook, Inc.,
 2011 U.S. Dist. LEXIS 124506 (N.D. Cal. Oct. 27, 2011) ...................................21

Comedy III Prods., Inc. v. Gary Saderup, Inc.,
 25 Cal. 4th 387 (2001) .....................................................................................12, 13

D.C. v. R.R.,
 182 Cal. App. 4th 1190 (2010) ................................................................................7

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Daly v. Viacom,
 238 F. Supp. 2d 1118 (N.D. Cal. 2002) (Chesney, J.) ............................................14

Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.),
 956 F.3d 589 (9th Cir. 2020) ...........................................................................21

De Havilland v. FX Networks, LLC,
 21 Cal. App. 5th 845 (2018) .............................................................11, 12, 13

Dex Media W., Inc. v. City of Seattle,
 696 F.3d 952 (9th Cir. 2012) ...........................................................8, 9, 10

Dora v. Frontline Video, Inc.,
 15 Cal. App. 4th 536 (1993) ...........................................................12, 15, 16

Downing v. Abercrombie & Fitch,
 265 F.3d 994 (9th Cir. 2001) ...........................................................14, 15

Eastwood v. Superior Court,
 149 Cal. App. 3d 409 (1983) .............................................................14

Eidmann v. Walgreen Co.,
 522 F. Supp. 3d 634 (N.D. Cal. 2021) .............................................17

ETW Corp. v. Jireh Publ'g, Inc.,
 332 F.3d 915 (6th Cir. 2003) .............................................................8

Exeltis USA, Inc. v. First Databank, Inc.,
 520 F. Supp. 3d 1225 (N.D. Cal. 2021) ............................................9

In re Facebook Privacy Litig.,
 791 F. Supp. 2d 705 (N.D. Cal. 2011) ..............................................21

FilmOn.com Inc. v. DoubleVerify Inc.,
 7 Cal. 5th 133, 151 (2019) ................................................................7

Fraley v. Facebook, Inc.,
 830 F. Supp. 2d 785 (N.D. Cal. 2011) ..............................................20

Gates v. Discovery Commc'ns, Inc.,
 34 Cal. 4th 679 (2004) .......................................................................16

Gionfriddo v. Major League Baseball,
 94 Cal. App. 4th 400 (2001) .............................................12, 13, 15, 16

In re Google, Inc. Privacy Policy Litig.,
 2013 U.S. Dist. LEXIS 171124 (N.D. Cal. Dec. 3, 2013) ..................19

Guglielmi v. Spelling-Goldberg Prods.,
 25 Cal. 3d 860 (1979) ........................................................................14

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Hadley v. Kellogg Sales Co.,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................................17

Health Sys. Agency of N. Va. v. Va. State Bd. of Med.,
    424 F. Supp. 267 (E.D. Va. 1976).....................................................................8, 9

Herring Networks, Inc. v. Maddow,
    8 F.4th 1148 (9th Cir. 2021)...........................................................................7, 8

Hilton v. Hallmark Cards,
    599 F.3d 894 (9th Cir. 2010).............................................................................9

Int-Elect Eng'g, Inc. v. Clinton Harley Corp.,
    1993 U.S. Dist. LEXIS 11510 (N.D. Cal. 1993).........................................14

Integrated Healthcare Holdings, Inc. v. Fitzgibbons,
    140 Cal. App. 4th 515 (Ct. App. 2006) .....................................................6, 16

In re iPhone Application Litig.,
    2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sept. 20, 2011).........................22

Jackson v. Loews Hotels, Inc.,
    2019 U.S. Dist. LEXIS 115810 (C.D. Cal. Jan. 4, 2019)............................20

Kellman v. Spokeo, Inc.,
    2022 U.S. Dist. LEXIS 71985 (N.D. Cal. Apr. 19, 2022)...........................21

Knapke v. PeopleConnect Inc.,
    553 F. Supp. 3d 865 (W.D. Wash. 2021) ........................................................9

Kolebuck-Utz v. Whitepages, Inc.,
    2021 U.S. Dist. LEXIS 77300 (W.D. Wash. Apr. 22, 2021) ......................21

Krause v. RocketReach, LLC,
    561 F. Supp. 3d 778 (N.D. Ill. 2021) ............................................................21

Lukis v. Whitepages, Inc.,
    454 F. Supp. 3d 746 (N.D. Ill. 2020) ............................................................21

Miller v. Collectors Universe, Inc.,
    159 Cal. App. 4th 988 (2008)........................................................................19

Moreno v. Hanford Sentinel, Inc.,
    172 Cal. App. 4th 1125 (2009).......................................................................19

Page v. Something Weird Video,
    960 F. Supp. 1438 (C.D. Cal. 1996)..............................................................14

Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,
    890 F.3d 828 (9th Cir. 2018)...........................................................................7

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ret. Sys. v. Moody's Investor Serv., Inc.,
  226 Cal. App. 4th 643 (2014).................................................................7

Rivero v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO,
  105 Cal. App. 4th 913 (2003)...............................................................16

Sarver v. Chartier,
  813 F.3d 891 (9th Cir. 2016)............................................................6, 20

Saunders v. Superior Court,
  27 Cal. App. 4th 832 (1994)..................................................................17

Scott v. Citizen Watch Co. of Am., Inc.,
  2018 U.S. Dist. LEXIS 57672 (N.D. Cal. Apr. 4, 2018).....................15

Sessa v. Ancestry.com Operations Inc.,
  561 F. Supp. 3d 1008 (D. Nev. 2021) .................................................21

Sipple v. Chronicle Publ'g Co.,
  154 Cal. App. 3d 1040 (1984)..............................................................19

Spokeo, Inc. v. Robins,
  578 U.S. 330 (2016) .............................................................................18

Todd v. Tempur-Sealy Int'l, Inc.,
  2015 U.S. Dist. LEXIS 27803 (N.D. Cal. Mar. 6, 2015) ....................20

United Bhd. of Carpenters v. NLRB,
  540 F.3d 957 (9th Cir. 2008)................................................................11

Virgil v. Time, Inc.
  527 F.2d 1122 (9th Cir. 1975)..............................................................18

Va. State Bd. of Pharmacy, 425 U.S. 749 (1976) ...................................10

**Statutes**

Cal. Bus. & Prof. Code § 17200...............................................................17

Cal. Civ. Code § 3344 .......................................................................... *passim*

Cal. Code Civ. Proc. § 425.16................................................................ *passim*

California Public Records Act, Cal. Gov't Code §§ 6250, et seq. ..................16

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq..................3

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**Other Authorities**

U.S. Const. Amend. I ........................................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(1) ........................................................22

Federal Rule of Civil Procedure 12(b)(6) ........................................................22

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      PRELIMINARY STATEMENT

Dun & Bradstreet ("D&B") brings this special motion to strike under California's Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, because Plaintiff's effort to impose liability against it for publishing non-private information of public interest in its Hoovers business-to-business database ("Hoovers") would violate D&B's First Amendment right of free speech, and because Plaintiff fails to state an actionable right of publicity or other claim under state law in any event.

D&B is one of the oldest publishers of business information in the country. Although best known for its credit risk and due diligence publications that are widely used around the world, it publishes other important business information that facilitates global and national trade in important ways. Hoovers is a business-to-business publication that compiles into a comprehensive database useful factual information about businesses and other entities, like Plaintiff's employer, the City of Richmond. Hoovers reports facts of public interest about the City of Richmond, including Plaintiff's name and her contact information in her capacity as a city Librarian.

Nothing in California's publicity laws precludes D&B from listing the true facts of Plaintiff's name, job title, employer, and business contact information in Hoovers, nor could it. The First Amendment protects the conveying of that non-private information.[1] The fact that D&B provides a free trial of Hoovers, coupled with a subscription offer, does not alter the analysis. This is because the so-called "advertisement" Plaintiff complains of (i.e., the demonstration of the Hoovers publication in the free trial) is for an expressive work – a database of information – that is, itself, fully protected by the First Amendment. The law is clear that advertisements for expressive works are as constitutionally protected as the underlying works themselves. Imposing liability against D&B for publishing Hoovers, or for offering a free trial of Hoovers, would patently violate D&B's First Amendment speech rights and undermine its ability to demonstrate its publication.

---

[1] This case does not raise alleged disclosure of: (1) any confidential personal data such as a social security number or private home address, such as that protected by the CCPA or other privacy laws; (2) any false or defamatory information; or (3) any information that allegedly portrays Plaintiff in a false light or reveals secret details of her personal life.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

This case has broader implications as well. If Plaintiff's consent was deemed required to include this basic, true business information about her in Hoovers (and the same were true for the other putative class members), that ruling would no doubt substantially hinder the flow of important information in our society, including:

- Every online phonebook, yellow pages, professional directory, and other similar directory relating to California residents;

- Every searchable fee-based news website, magazine, encyclopedia, or other database that contains information about California residents; and

- Every California employer's website that identifies its California-resident employees.

That cannot be what California publicity laws require or intend, and misreading the law in this way would unconstitutionally restrain important speech on matters of legitimate public concern.

Plaintiff's Complaint should thus be stricken under California's Anti-SLAPP statute, which is designed to bring to an early end meritless lawsuits like this one that arise from the distribution of information regarding matters of public interest. Plaintiff cannot demonstrate a probability of prevailing on her claims because her claims are barred by the First Amendment and state law, and she does not have standing to bring them in any event. Accordingly, her Complaint should be dismissed with prejudice, and D&B should be awarded its attorneys' fees and costs incurred in litigating this motion.

## II. __STATEMENT OF FACTS__

### A. __D&B has been publishing business information for over one hundred eighty years.__

Founded in 1841, and in continuous operation since, D&B is one of the oldest and most prominent publishers of business information in the country. *See* Declaration of Karlos Palmer, dated June 30, 2022 ("Palmer Decl.") ¶ 2. Although D&B is most well-known for its credit reporting publications, it publishes other content that facilitates national and global trade in other ways. *Id.* ¶ 4. One such publication is D&B Hoovers. *Id.* ¶ 6.

**B.** **D&B's Hoovers database is one of the company's flagship publications.**

Hoovers is a sales and marketing publication, provided in database format, that allows business professionals to research continuously updated data about other businesses, government and non-governmental entities and other organizations. *Id.* ¶ 5. Hoovers also provides industry-level information, such as industry news, new business developments, lawsuits, analysts' reports, and other information. *Id.* ¶ 6.

Company profiles in the Hoovers database include, among other information, company histories, corporate family trees, financial information, stock data, company news and events, including mergers and acquisitions, court and corporate filings, and other useful business information. *Id.* ¶ 7. Hoovers also includes information regarding the business contacts at each company—i.e., corporate officers, directors and other employees within the company. These profiles are short and the vast majority are limited to basic business contact information: name, job title, and business contact information (i.e., work phone and email address). *Id.* ¶ 8. Subscribers rely on this comprehensive business information in the Hoovers database as a research tool to make well-founded business decisions, and to research, analyze and market to businesses and other organizations. *Id.* ¶¶ 9-11. This information is of legitimate public interest and it facilitates modern commerce. *Id.* ¶ 11.

**C.** **Potential subscribers to Hoovers might see, during a free trial of Hoovers, Plaintiff's and putative class members' non-private business contact information.**

Plaintiff Odette Batis is an individual residing in California who purports to sue on behalf of a class consisting of all current and former California residents. Compl. ¶¶ 1-2, 4. Plaintiff complains that D&B used her and putative class members' business contact information in the Hoovers database without their express consent. She contends that doing so violates California's right of publicity statute, Cal. Civ. Code § 3344; California's common law prohibiting misappropriation of a name or likeness; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. Compl. ¶¶ 1, 4. She also complains that D&B's offer of free trials of the Hoovers publication is an unlawful "advertising" use of her name, business

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

information, and "personal information." *Id.* ¶¶ 7-8 (alleging that D&B "advertises" and "promotes" the Hoovers database by publicly displaying information about Plaintiff and class members, "including their names, contact information, job titles, place of work, and the identities of their work colleagues," as well as "personal information," during the free trial). More specifically, Plaintiff alleges that those who sign up for a free trial on the Hoovers website may run searches and obtain this information contained in the database. *Id.* ¶¶ 8, 33.

D&B does offer free trials of its publication, as many publishers using a subscription business model do in the digital age, to show how it works and illustrate the types of content contained within it. Palmer Decl. ¶ 22. But contrary to Plaintiff's contentions, Hoovers does not display "personal information," whether during the free trial or otherwise. It is a business-to-business information database containing business information only. Palmer Decl. ¶¶ 8, 12-22, 27. Thus, depending on the search terms used, the search results might return to the subscriber (or trial subscriber) information about Plaintiff in her capacity as a librarian for the City of Richmond, California – i.e., her name, job title, place of work, telephone number and email address – to the extent those pieces of business data are in the database. *Id.*

According to the Complaint, this information for Plaintiff is:



*Compl.* ¶ 34. Although Plaintiff's counsel has redacted "Ms. Batis' phone number" as it appears on Hoovers, that is a City of Richmond phone number, not a personal one. Palmer Decl. ¶ 15. Plaintiff concedes that this information is accurate. *Compl.* ¶ 33.

Plaintiff also concedes that she and class members "may have" shared their names, contact information, job descriptions, and job titles with companies or individuals in a variety of contexts, including posting such information on their employer's websites or other professional websites. *Id.* ¶ 17. In fact, Plaintiff has voluntarily published her job information on LinkedIn, and it is

published and widely available in literature, conference presentations, grant applications and other documents subject to California's public disclosure laws, and in news articles. Declaration of Ryan L. O'Neill, dated June 30, 2022 ("O'Neill Decl.") ¶¶ 2-10 & Exs. 1-5. Similarly, there is no dispute that the business contact information of others at the City of Richmond and the information pleaded about other putative class members in the Complaint is neither false nor confidential. *See* Compl. ¶¶ 35-38.

To continue using the Hoovers database after the free trial, a potential subscriber must purchase a Hoovers subscription. *Id.* ¶¶ 39-40. Plaintiff alleges that the "sole purpose" of D&B using her accurate name, job title, and business contact information is "to solicit subscriptions," *Id.* ¶ 43, but that is plainly not correct. As Plaintiff acknowledges, her and the class members' business information that is displayed during a free trial is "part of [D&B's] Hoovers subscription product" itself *Id.* ¶ 4; Palmer Decl. ¶ 27 ("Prospective subscribers using the free trial get the same search results in response to queries that subscribers do."). Thus the sole purpose for D&B including Plaintiff's information in Hoovers is to provide useful business information to subscribers and potential subscribers of the publication—the same reason why *any* data is included in Hoovers. Palmer Decl. ¶ 26.

### D. <u>Plaintiff does not allege this business contact information has commercial value independent of D&B's efforts to collect and publish it.</u>

Plaintiff alleges that her and the class members' name and employment details "have commercial value" but she pleads no facts in support of that allegation. *See* Compl. ¶¶ 13-14. Rather, she pleads in circular fashion that this alleged commercial value "is demonstrated by the exploitation of their names, personal information, photographs, likenesses, and personas for commercial gain by Dun & Bradstreet and [its] competitors." *Id.* ¶ 13.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## III.   ARGUMENT

### A.   Plaintiff's Complaint is subject to a special motion to strike under California's Anti-SLAPP statute.

California's legislature enacted the anti-SLAPP statute thirty years ago, declaring that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." Cal. Code Civ. Proc. ("CCP") § 425.16(a). The statute's ambit is broad, reaching all cases involving speech on matters of public interest:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

§ 425.16(b)(1); *see also id.* § 425.16(a) ("[T]his section shall be construed broadly.").

Anti-SLAPP motions are evaluated in two steps. "The defendant must first 'make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution.'" *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016)). The statute defines such an act as occurring in the following four circumstances:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) *any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest*, or (4) *any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest*.

Code Civ. Proc. § 425.16(e) (emphases added).

Here, Plaintiff's claims arise from speech that falls under the third and fourth circumstances. Business information is information of legitimate public interest. *See Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 523 (Ct. App. 2006) (noting that matters of public interest include information regarding business entities). With respect to

subsection (e)(3), "'[w]eb sites accessible to the public … are "public forums" for purposes of the anti-SLAPP statute.'" *See D.C. v. R.R.*, 182 Cal. App. 4th 1190, 1226 (2010) (quoting *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1039 (2008)). It is undisputed that D&B's Hoovers database is accessible to the public. *See* Compl. ¶¶ 7-10. And the fact that Hoovers is a subscription publication does not change the analysis. *See Pub. Emps.' Ret. Sys. v. Moody's Investor Serv., Inc.*, 226 Cal. App. 4th 643, 661 (2014) (holding that prong one of the anti-SLAPP statute applied to action arising from subscription-based credit ratings report issued by Moody's Investor's Service and Standard & Poor's). And subsection (e)(4) applies because Hoovers collects and makes business information available to the public, providing analytic search tools that enable users to view and understand that information in countless ways. Hoovers "participated in, or furthered, the discourse that makes an issue one of public interest." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 151 (2019) (subsection (e)(4) applies where the defendant "participated in, or furthered, the discourse that makes an issue one of public interest").

Since step one is satisfied, this Court must "evaluate whether the plaintiff has 'established a reasonable probability that [she] will prevail on . . . her claim.'" *Sarver*, 813 F.3d at 901 (citation omitted). "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* For this step, federal courts must "review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). The analysis depends on whether the motion challenges the legal sufficiency of [the] complaint[]" or "the factual sufficiency of [the] complaint[]." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021).

This motion challenges both the legal and factual sufficiency of Plaintiff's claims. D&B disputes, with evidence, Plaintiff's factual contentions purportedly describing the information displayed in Hoovers, including her contention that Hoovers displays her "personal information" as opposed to non-private business information D&B has a First Amendment right to publish. D&B also disputes, as a matter of law, Plaintiff's characterization of the free trial of Hoovers as an

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

"advertisement" that unlawfully uses Plaintiff's "intellectual property." D&B contends that Plaintiff does not have standing to bring her claims because she has alleged no independent commercial value in her persona, and that even if she did, her claims nevertheless fail as a matter of substantive law. Where, as here, the motion involves a factual challenge to the complaint, the court treats the motion like a summary judgment motion; it must strike the complaint and enter judgment for the defendant unless the plaintiff demonstrates there is a genuine dispute as to a material fact precluding entry of judgment as a matter of law. *Id.* at 1156-57. Here, Plaintiff cannot meet that burden for three separate and independent reasons: (1) the First Amendment bars Plaintiff's claims, (2) Plaintiff has failed to show an actionable misappropriation of her persona or UCL claim under common law or statute, and (3) Plaintiff lacks Article III standing.

**B.** **Plaintiff's publicity and misappropriation claims are barred by the First Amendment.**

Even if Plaintiff had standing to bring her claims, which she does not (*see infra* Section III.I.), the First Amendment bars them. Plaintiff's theory of liability – that D&B cannot publish information of interest to the public without the consent of Plaintiff and the class members – would violate D&B's First Amendment rights.

**1.** **D&B's Hoovers publication is entitled to full constitutional protection.**

Hoovers is a publication that is fully protected by the First Amendment. As the Sixth Circuit well put it, "[t]he right of publicity as recognized by statute and common law is fundamentally constrained by the public and constitutional interest in freedom of expression." *ETW Corp. v. Jireh Publ'g, Inc*., 332 F.3d 915, 930 (6th Cir. 2003). Courts have routinely held that full First Amendment protection applies to even basic directories of names, addresses, phone numbers, and other identifying information. *See, e.g.*, *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012) ("[Y]ellow pages directories qualify for full protection under the First Amendment."); *Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272-73 (E.D. Va. 1976) (publication of physician information, including name and phone number, protected by First Amendment); *Bergen v. Martindale-Hubbell, Inc.*, 285 S.E.2d 6, 6-7 (Ga. 1981) (First Amendment and Georgia Constitution protect publication of attorney directory). And

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Hoovers contains even more information of legitimate public interest than a simple directory does given its analytic tools. *See* p. 3, *supra*.

Plaintiff makes much of the fact that D&B sells its publication for profit, likely in anticipation of arguing that Hoovers is "commercial speech" not entitled to full constitutional protection. *See, e.g.*, Compl. ¶ 6 ("A subscription to the D&B Hoovers database costs in excess of $10,000 per year."). But the fact that D&B sells Hoovers for profit does not make it commercial speech or lessen its protection in any way. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021) ("A simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech."); *Exeltis USA, Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1230 (N.D. Cal. 2021) ("collection of . . . consumer information" which is sold and relied upon for "commercial ends" is not commercial speech); *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) ("Hallmark's card is not advertising the product; it is the product. It is sold for a profit, but that does not make it commercial speech for First Amendment purposes.") (emphasis in original). Hoovers is fully protected, noncommercial speech.[2]

---

[2] D&B anticipates that Plaintiff will cite federal district court decisions denying dispositive motions in some of the many similar class action cases pending around the country holding to the contrary. These decisions were incorrect in their analysis of the First Amendment. For example, in *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 880 (W.D. Wash. 2021), the court improperly found that the website at issue was commercial speech and protection under the First Amendment was questionable, "given that it misappropriate[d] [plaintiff's] persona and potentially misleads the public." The court's holding – that speech is automatically deemed commercial when its "purpose" is to "entic[e] viewers into buying" a website's services – ignores law to the contrary, including the body of case law discussed herein holding that ads for expressive speech works (e.g., films, books, and other publications) are as constitutionally protected as the works themselves. Many other courts, including the Ninth Circuit, have properly held that directories of names, addresses, phone numbers, and other identifying information are non-commercial speech. *See, e.g.*, *Dex Media W., Inc.*, 696 F.3d at 954 ("[Y]ellow pages directories qualify for full protection under the First Amendment."); *Health Sys. Agency v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272-73 (E.D. Va. 1976) (publication of physician information is protected). Further, "economic motive in itself is insufficient to characterize a publication as commercial." *Dex Media W., Inc.*, 696 F.3d at 960 (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983)).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1
2

**2. Application of California's right of publicity laws to prohibit D&B from publishing business contact information in Hoovers without consent cannot satisfy strict scrutiny.**

3      By its terms, California's right of publicity law clearly restricts speech based upon its

4  content." *Sarver*, 813 F.3d at 903. And as the Supreme Court has explained, "[i]t is rare that a

5  regulation restricting speech because of its content will ever be permissible." *Brown v. Ent.*

6  *Merchs. Ass'n*, 564 U.S. 786, 799 (2011). "Content-based laws" are "presumptively

7  unconstitutional" and are subject to strict scrutiny – i.e., they "may be justified only if the

8  government proves that they are narrowly tailored to serve compelling state interests." *Reed v.*

9  *Town of Gilbert*, 576 U.S. 155, 163 (2015); *Dex Media W., Inc.*, 696 F.3d at 965-66 (ordinance

10  regulating yellow pages did not survive strict scrutiny).

11      Yet, in seeking to impose civil liability on D&B for the mere inclusion of her name and

12  work contact information in a business-to-business database that captures hundreds of thousand

13  other individuals' employment information, Plaintiff does not even attempt to set forth what

14  "compelling interest" conceivably exists that would justify the extraordinary restriction on speech

15  she seeks. There isn't one. The Supreme Court has already held that protecting people from sales

16  and marketing communications is not an interest sufficient to support state suppression of speech.

17  *See, e.g., Va. State Bd. of Pharmacy*, 425 U.S. 749, 773 (1976) (holding that State may not

18  "suppress the dissemination of concededly truthful information about entirely lawful activity" and

19  therefore law prohibiting pharmacists from advertising prescription drug prices was

20  unconstitutional). The state's interest in the right of publicity is to protect an individual's ability to

21  exploit the commercial value of their name and persona if those things in fact have independent

22  commercial value. And the conduct itself must be outside of the First Amendment's protection for

23  freedom of expression. Prohibiting the inclusion of non-private information about a person's

24  employment in a business publication does nothing to advance this state interest, much less in a

25  narrowly tailored way. Indeed, the *opposite* is true; there is a compelling state interest in

26  facilitating trade and commerce by enabling businesses to better target their advertising and

27  marketing efforts to other businesses in need of their products or services. Accordingly, a ruling

28  applying the publicity laws to effectively prohibit D&B from publishing Hoovers without first

obtaining the consent of the persons whose business contact information appears within it would violate the First Amendment.

### 3. Nor can it satisfy intermediate scrutiny.

Notably, the result would be the same even if Hoovers were considered commercial speech. Such speech is entitled to "substantial protection" under the First Amendment and any restrictions imposed on it "must survive intermediate scrutiny." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564-65 (1980). The imposition of liability in this case would not.

Under *Central Hudson*, to regulate speech that, as here, is neither misleading nor contributes to illegal activity under the "commercial speech" doctrine, the government must (1) assert a substantial interest in support of its regulation; (2) demonstrate that the proffered restriction on speech directly and materially advances that interest; and (3) show that the restriction is "'narrowly drawn.'" *Id.* at 563-64.

Here, for the reasons set forth above, application of the publicity laws to bar D&B from freely publishing Hoovers does not satisfy this test. There is no substantial interest in preventing the dissemination of true, non-private information, nor is there a "reasonable fit" between California's goal with its right of publicity law—preventing unauthorized commercial endorsements—and barring D&B's publication of search results that simply identify persons at businesses. *United Bhd. of Carpenters v. NLRB*, 540 F.3d 957, 969 (9th Cir. 2008) ("[A] regulation that forecloses an entire medium of public expression across the landscape of a particular community or setting fails to leave open ample alternatives."). Thus, even under intermediate scrutiny, the First Amendment bars Plaintiff's claim.

### 4. Hoovers is constitutionally protected as an expressive and transformative work.

Even setting aside that Plaintiff is advocating for a constitutionally impermissible content regulation, her claims are barred by the First Amendment nonetheless. In *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845 (2018), the California Court of Appeals was asked whether producers of a film that included reference to a real person without her consent, and the

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

11

promotional advertisements for that film, could be liable for violating that person's right of publicity under various state law theories. *See id.* at 870-71. The court held, in no uncertain terms, that the answer is no. The film is an "expressive work" that is "speech that is fully protected by the First Amendment, which safeguards the storytellers and artists who take the raw materials of life—including the stories of real individuals, ordinary or extraordinary—and transform them into art, be it articles, books, movies, or plays." *Id.* at 860; *see also, e.g., Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 545 (1993) (plaintiff was constitutionally barred from recovering on right of publicity claims for his appearance in documentary).

The court held in the alternative that liability could not be imposed because the film is a "transformative work" under right of publicity law, citing *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 404 (2001). *De Havilland*, 21 Cal. App. 5th at 862-64. Under *Comedy III*, the central inquiry is whether a work is "transformative"—that is, "'whether the new work merely 'supersede[s] the objects' of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message . . . .'" *Id.* at 404. Where a person's "likeness is one of the 'raw materials' from which an original work is synthesized," and the use of the person's persona is not "the very sum and substance of the work in question," there can be no liability because the use of the person's persona is "transformative." *Id.* at 406.

As was the case with the film at issue in *De Havilland*, Plaintiff's right of publicity claims here cannot proceed because Hoovers is a transformative, expressive work. The *Comedy III* court made clear that "the transformative elements or creative contributions" to the use of persona "that require First Amendment protection are not confined to parody and can take many forms," including, as here, "factual reporting." *Id.* at 809 (citing *Comedy III*); *see also, e.g., Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410 (2001)) (holding that the First Amendment protected Major League Baseball's use of "factual data concerning [Major League Baseball] players, their performance statistics, and verbal descriptions and video depictions of their play."). Here D&B takes the "raw materials" of certain aspects of persona (business contact information, employer, what industry they work in, etc.) and "adds something new." It does not

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

merely publish a static listing of a person's business contact information, or use a person's identity in an advertisement for a product. It curates factual information about businesses, and publishes that information dynamically in response to search term queries that organize and reflect the data in innumerable different ways in response to input (search terms) entered by the subscriber to analyze that information. Moreover, "the marketability and economic value" of Hoovers certainly does not "derive primarily from" Plaintiff's "fame." *See Comedy III*, 25 Cal. 4th at 407. As set forth below and alleged in the Complaint, the only value of Plaintiff's name in this context is the value to Hoovers of the demographic facts of her (and thousands of other persons') employment, not from Plaintiff's own reputation, prestige or fame. *See* p. 3, *infra*. This kind of expressive work falls squarely within what California courts have contemplated as being excluded from publicity liability. *E.g.*, *Gionfriddo*, 94 Cal. App. 4th at 413.

### 5. Since Hoovers is protected by the First Amendment, so is D&B's free trial of that publication.

Plaintiff paints D&B's free trial subscription as an unlawful "advertising" use of her identity. *E.g.*, Compl. ¶¶ 3, 11, 16. This is incorrect as a matter of well-established law. The "product"[3] Batis claims is being "advertised" by a free trial is not just any product, it is a <u>speech product—a publication that is protected by the First Amendment</u>. And the law on advertisements <u>for speech products</u> is clear: unlike advertisements for other types of products, these advertisements are not commercial speech. As the court explained in *De Havilland*, they are protected by the First Amendment to the same extent as the publication being advertised, and therefore no right of publicity claim lies for a person identified in the advertisement who appears in the publication itself. 21 Cal. App. 5th at 862 (finding that constitutional protection for an expressive work extends to the truthful use of name and likeness in advertising that is "merely an adjunct of the protected publication and promotes only the protected publication") (internal quotation marks omitted); *accord, e.g.*, *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir.

---

[3] The court in *De Havilland* expressed serious doubt as to whether an expressive work can be a "product, merchandise, or good" under Section 3344. Cal. App. 5th at 857-59. Plaintiff's statutory right of publicity claim fails for this additional reason. Hoovers is not a "product, merchandise, or good" within the meaning of that statute. It is an expressive work that falls outside the statute.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1982) (noting that "advertising for the purpose of indicating the content of the publication [] . . . is protected by the First Amendment."); *Daly v. Viacom*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (Chesney, J.) (same). If that were not true, other First Amendment-protected publications such as newspapers that offer "free trials" of their subscriptions, or place their content behind a partial paywall where a portion of the content is visible, would also violate publicity laws. This cannot be, and obviously is not, the law. *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 873 (1979) ("It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise."); *Int-Elect Eng'g, Inc. v. Clinton Harley Corp.*, 1993 U.S. Dist. LEXIS 11510 (N.D. Cal. 1993) (magazine subscription card reproducing photograph from earlier issue merely indicated nature, quality, and contents of magazine and fell within the exception); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1444 (C.D. Cal. 1996) ("Defendants' advertising is protected because the videos themselves are protected by the First Amendment, and the advertising is incidental to the protected publication of the videos.").

Because the First Amendment bars Plaintiff's claims arising from the use of her identity in Hoovers, Plaintiff's complaint should be stricken.

### C. Plaintiff's claims also fail under state law.

Plaintiff would not be entitled to recovery on her claims even if the First Amendment did not present an insurmountable bar to them. Each of her claims fails under state law as well.

#### 1. D&B's use of Plaintiff's information falls within the public interest/public affairs exceptions to liability for right of publicity and misappropriation claims.

"A common law cause of action for appropriation of name or likeness may be pleaded by alleging (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (1983). To recover for statutory misappropriation, a plaintiff must prove all the elements of the common law cause of action and, in addition, must allege a knowing use by the defendant as well as a direct connection

between the alleged use and the commercial purpose. Cal. Civ. Code § 3344; *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).

Under both types of claims, however, "no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it.'" *Downing*, 265 F.3d at 1001 (quoting *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995)). "The common law exception precludes liability for the 'publication of matters in the public interest.'" *Scott v. Citizen Watch Co. of Am., Inc.*, 2018 U.S. Dist. LEXIS 57672, at *15 (N.D. Cal. Apr. 4, 2018) (quoting *Montana*, 34 Cal. App. 4th at 794-95). Likewise, Section 3344 exempts liability for "a use of a name, voice, signature, photograph, or likeness in connection with any . . . public affairs . . . ." Cal. Civ. Code § 3344(d). Courts considering both exceptions usually "either analyze them together or reach the same outcome on both." *Scott*, 2018 U.S. Dist. LEXIS 57672, at *16.

The terms "public interest" and "public affairs" are to be construed broadly and are "intended to mean something less important than news." *See Dora*, 15 Cal. App. 4th at 545. In particular, given that Section 3344(d) "distinguishes between news and public affairs," courts "presume that the Legislature intended that the category of public affairs would include things that would not necessarily be considered news. Otherwise, the appearance of one of those terms in the subsection would be superfluous . . . ." *Id.* Further, because "the public is interested in and constitutionally entitled to know about things, people, and events that affect it[,] . . . we cannot limit the term 'public affairs' to topics that might be covered on public television or public radio." *Id.* at 545-46. "To do so would be to jeopardize society's right to know, because publishers and broadcasters could be sued for use of name and likeness in documentaries on subjects that do not relate to politics or public policy, and may not even be important, but are of interest." *Id.* at 546.

In determining whether the "public interest" or "public affairs" exceptions are applicable, courts apply a balancing test. First, courts "consider the nature of the precise information conveyed and the context of the communication to determine the public interest in the expression." *Gionfriddo*, 94 Cal. App. 4th at 410. The public interest is then weighed against the plaintiff's interests. *Id.*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Applying this test, courts have found a wide variety of uses of a plaintiff's identity to be in the public interest or otherwise protected by Section 3344's public affairs exception. For example, the plaintiff in *Dora* sued over the defendants' use of footage of plaintiff without consent in a documentary on surfing. 15 Cal. App. 4th at 540. Finding that surfing was "of more than passing interest to some," the court held the documentary to be both a matter of "public interest" and within the category of "public affairs." *Id.* at 546. In so doing, the court focused on the impact of surfing as a whole, noting in part that a "phenomenon of such scope has an economic impact, because it affects purchases, travel, and the housing market." *Id.* Regarding matters of public interest more generally, the court noted that individuals often, "willingly or unwillingly" contribute to such matters and while "any one of them as individuals may not have had a particular influence," they can have great impact as a group. *Id.* at 543.

Thus, despite Plaintiff's "belie[f]" that "her name and persona is rightly hers to control," Compl. ¶ 49, the law is clear that it is not. The information in Hoovers is useful business information of public interest. Such information is of economic importance. It affects marketing, solicitations, and business-to-business purchases, and thereby facilitates trade and commerce. It falls well within the ambit of the public interest/public affairs exceptions. *See Rivero v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 922 (2003) ("[T]he definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society. . . .") (internal citations omitted); *Integrated Healthcare Holdings, Inc.*, 140 Cal. App. 4th at 523.[4] Those exceptions extend equally to the free trial subscription for Hoovers. *See Gionfriddo*, 94 Cal. App. 4th at 414 (publisher of an expressive work "is entitled to show that product to entice customers to buy it" and do not incur publicity liability for doing so).

---

[4] The fact that Batis is a public employee further compels application of the public interest and public affairs exceptions to her claims. All of the basic information about her position as city librarian that is contained in Hoovers is presumably public information under the California Public Records Act, Cal. Gov't Code §§ 6250, et seq. *See also Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679, 691 (2004) ("[O]nce the truthful information was 'publicly revealed' or 'in the public domain' the court [could not] constitutionally restrain its dissemination.").

**2. Plaintiff's UCL claim falls with her statutory right of publicity and common law misappropriation claims.**

Because Plaintiff cannot recover for commercial misappropriation or the right of publicity, neither can she recover for unfair competition based on the same alleged facts. "The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (citing Cal. Bus. & Prof. Code § 17200). "Each 'prong' of the UCL provides a separate and distinct theory of liability." *Id.* (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Here, Plaintiff asserts a UCL cause of action under both the "unlawful" and "unfair" prongs. Compl. ¶¶ 73-76.

"The 'unlawful' practices prohibited by § 17200 are any practices forbidden by law . . . ." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). Therefore, to establish a claim under the "unlawful" prong, the UCL "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200." *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002). Furthermore, "when [a] plaintiff's claim under the unfair prong overlaps entirely with the conduct alleged in the . . . unlawful prong[] of the UCL, 'the unfair prong of the UCL cannot survive'" if the claim under the unlawful prong fails. *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (quoting *Hadley*, 243 F. Supp. 3d at 1105).

Because Plaintiff's claims of common law appropriation and violation of Section 3344 fail, Plaintiff's claim under the "unlawful" prong of the UCL likewise fails. Further, Plaintiff's claim under the "unfair" prong of the UCL overlaps with her claim under the "unlawful prong." *See* Compl. ¶ 76 ("By engaging in the conduct described in this complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Dun & Bradstreet engaged in and continues to engage in 'unfair' business acts and practices prohibited by the UCL."). As a result, Plaintiff's entire UCL claim is untenable and must be dismissed on the same grounds as her other claims.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**D.** **Plaintiff does not have standing to bring her claims because she has not suffered an "injury in fact."**

As set forth above, Plaintiff's claims fail as a matter of federal constitutional and state substantive law. They also fail for a basic procedural reason; she does not have standing to bring them in the first place, because she has suffered no "injury in fact."

To have Article III standing, a plaintiff must have suffered "injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). And for an injury to be concrete, it "must be 'de facto'; that is, it must actually exist" and be "'real,' and not 'abstract.'" *Spokeo*, 578 at 340.

Plaintiff alleges three injuries: (1) misappropriation of her "intellectual property"; (2) invasion of her privacy rights; and (3) harm to her "peace of mind." Compl. ¶ 23. These allegations fall far short of plausibly pleading injury in fact sufficient to confer standing.

First, the only "intellectual property" interest Plaintiff alleges in this case is the right of publicity. As set forth above, Plaintiff has no actionable right of publicity or commercial misappropriation claim.

Second, the information Plaintiff complains about D&B publishing is not the type of information the law protects as being, by its nature, "private." *Virgil v. Time, Inc.*, 527 F.2d 1122, 1129 (9th Cir. 1975) (publication of private facts claim applies where there is a "morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he had no concern"). It is undisputed that the information at issue is not protected confidential personal data, such as a social security number, private home address, or any other type of sensitive information. *See generally* Compl.

Nor has it been treated by others—or even by Plaintiff herself—as private. "A matter that is already public or that has previously become part of the public domain is not private." *Moreno*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009) (holding that information ceased to be private and became opened to the public eye once it was published on MySpace.com). Thus "there is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public or when the further publicity relates to matters which the plaintiff leaves open to the public eye." *Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1047 (1984). In this case, Plaintiff has voluntarily published her work information, and it is otherwise widely available in news articles, conference presentations, and grant applications and pension documents. *See* O'Neill Decl. ¶¶ 2-10 & Exs. 1-5. Moreover, this information is likely all publicly available under state open records laws. *See* note 4 *supra*.[5]

And third, harm to peace of mind, alone, does not suffice. Last year this Court dismissed with prejudice a similar right of publicity class action brought against Ancestry.com. *Callahan v. Ancestry ("Ancestry II")*, 2021 U.S. Dist. LEXIS 112036 (N.D. Cal. June 15, 2021). The Court noted that "[t]he [publicity rights] cases recognizing mental anguish all involve other injury." *Id.* at *11. For example, "[a] plaintiff's knowledge of commercial loss and/or defamation may be a component of mental harm, disturbing one's peace of mind." *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 n.12 (2008). But in the absence of commercial loss or defamation, mental anguish, alone, is not injury-in-fact.

Plaintiff has not alleged D&B defamed her, nor could she. Nor has she established any commercial loss:

> [I]njury-in-fact in this context requires more than an allegation that a defendant profited from a plaintiff's personal identification information. Rather, a plaintiff must allege how the defendant's use of the information deprived the plaintiff of the information's economic value. Put another way, a plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own. . . ."

*In re Google, Inc. Privacy Policy Litig.*, 2013 U.S. Dist. LEXIS 171124, at *16 (N.D. Cal. Dec. 3, 2013) (holding plaintiffs lacked standing to sue Google where Google used plaintiffs' information

---

[5] Plaintiff effectively complains that D&B made use of her "government persona"—a persona to which she has no property or publicity right. Plaintiff cannot use her government contact information to promote a personal business—it is not her information to profit from.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

without consent); *Ancestry II*, 2021 U.S. Dist. LEXIS 112036, at \*7-8 (holding that Ancestry's use of plaintiff's public information to solicit paying subscribers did not confer standing for right of publicity and UCL claims "even though Ancestry profits from the use").

Plaintiff makes no plausible allegations of commercial loss. She contends her information in Hoovers has "commercial value" but she offers nothing to support that naked assertion, instead relying on the circular argument that it must have commercial value since D&B includes it in Hoovers. *See* p. 5, *supra*. As this Court has observed, this is not enough. *See Ancestry II*, 2021 U.S. Dist. LEXIS 112036, at \*8 (holding that "plaintiffs do not show a commercial interest in their images that precluded the platform's use of them to market the platform's features"); *see also Sarver*, 813 F.3d at 905 (where an individual does not "invest time and money to build up economic value in a marketable performance or identity," the state "has no interest in giving" a cause of action for right of publicity).

Moreover, the fact that the information is already available in the public domain demonstrates that it is <u>not</u> commercially valuable. *See, e.g.*, *Todd v. Tempur-Sealy Int'l, Inc.*, 2015 U.S. Dist. LEXIS 27803, at \*16 (N.D. Cal. Mar. 6, 2015) (where information was "already available to the public," defendant "failed to show that any particularized harm will result from disclosure of the information."); *Jackson v. Loews Hotels, Inc.*, 2019 U.S. Dist. LEXIS 115810, at \*8-10 (C.D. Cal. Jan. 4, 2019) (holding that the plaintiff suffered no injury-in-fact when only publicly available information such as her "full name, email, phone number, and address" was exposed in data breach).

To establish injury-in-fact, "[m]ore is needed . . . such as an inference that the profiled persons personally endorsed" D&B's Hoovers database. *Callahan v. Ancestry.com Inc. ("Ancestry I")*, 2021 U.S. Dist. LEXIS 37811, at \*2 (N.D. Cal. Mar. 1, 2021). Thus standing has been found in cases where Facebook suggested that plaintiffs were endorsing their products. *See Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 799-800 (N.D. Cal. 2011); *C.M.D. v. Facebook, Inc.*, 2014 U.S. Dist. LEXIS 41371, at \*5-7 (N.D. Cal. Mar. 26, 2014) (same). Here, Plaintiff does not (and could not) allege D&B suggested to potential subscribers that she was endorsing its publication. She just makes the "conclusory assertion that plaintiffs[] have suffered injury-in-fact by having

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

their name[s] and likeness[es] misappropriated without their knowledge or consent." *See Cohen v. Facebook, Inc.*, 2011 U.S. Dist. LEXIS 124506, at *4 (N.D. Cal. Oct. 27, 2011) (internal quotation marks omitted) (second and third alterations in original). Other courts in class action right of publicity cases have rightly held this insufficient. *See id.*; *see also C.M.D.*, 2014 U.S. Dist. LEXIS 41371, at *6-7 (distinguishing *Fraley* and *Cohen* on these grounds); *Ancestry II*, 2021 U.S. Dist. LEXIS 112036, at *7-8 (analyzing *Fraley* and *C.M.D.* and holding that the use of "public profiles to solicit paying subscribers . . . standing alone . . . does not establish injury, even though [a defendant] profits from the use").[6]

Accordingly, the Complaint should also be stricken on the separate ground that Plaintiff lacks Article III standing. *Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 320-21 (2017) (holding that "a court that lacks subject matter jurisdiction over a claim may grant a special motion to strike the claim under section 425.16, and thus may award attorney's fees and costs to the defendant").[7]

---

[6] Cases declining to follow this Court's decision in *Ancestry II* are distinguishable. *See Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008 (D. Nev. 2021) (analyzing claims under Nevada law); *Bonilla v. Ancestry.com*, 2021 U.S. Dist. LEXIS 233870 (N.D. Ill. Dec. 7, 2021) (analyzing claims under Illinois law); *Kellman v. Spokeo, Inc.*, 2022 U.S. Dist. LEXIS 71985 (N.D. Cal. Apr. 19, 2022) (plaintiffs' information was presented with the false implication that they had committed crimes). *Kellman* also surmised that *Ancestry II* did not comport with *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589 (9th Cir. 2020). *See Kellman*, 2022 U.S. Dist. LEXIS 71985, at *16-17. *Davis* itself is readily distinguishable in that, unlike *Ancestry II* and this case, it involved a company using non-public information that had an established commercial value. 956 F.3d at 600-01. Other cases from outside the Ninth Circuit, while either not addressing *Ancestry II* or predating it, are also distinguishable in that they did not even address a lack of standing argument. *See Ancestry II*, 2021 U.S. Dist. LEXIS 112036, at *9 (distinguishing *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746, 759 (N.D. Ill. 2020) and *Kolebuck-Utz v. Whitepages, Inc.*, 2021 U.S. Dist. LEXIS 77300 (W.D. Wash. Apr. 22, 2021) on these grounds). *See also Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778 (N.D. Ill. 2021) (Illinois law claims); *Boshears v. PeopleConnect, Inc.*, 2022 U.S. Dist. LEXIS 54277 (W.D. Wash. Mar. 25, 2022) (Indiana law claims).

[7] Plaintiff does not have standing to assert her UCL claim for the additional reason that a UCL plaintiff must have lost "money or property" to have standing and it is well settled that even an individual's *personal* information constitutes neither money nor property for purposes of a UCL claim. *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011); *In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865, at *43-44 (N.D. Cal. Sept. 20, 2011) ("Numerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL.").

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court grant its anti-SLAPP motion to strike pursuant to Cal. Civ. Proc. Code § 425.16, dismiss the Complaint with prejudice, and conduct further proceedings to award D&B the attorneys' fees and costs to which it is entitled under the Anti-SLAPP statute.  In the alternative, Defendant respectfully requests that the Court dismiss the Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of Article III standing, and 12(b)(6), for failure to state a claim.

Respectfully submitted,

BALLARD SPAHR LLP

By: /s/ Ashley I. Kissinger
     Ashley I. Kissinger

RIKER DANZIG LLP

By: /s/ Michael R. O'Donnell
     Michael R. O'Donnell

*Attorneys for Defendant,*
* Dun & Bradstreet Holdings, Inc.*

Date:  June 30, 2022

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ashley I. Kissinger (SBN 193693)
*KissingerA@ballardspahr.com*
**BALLARD SPAHR LLP**
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.376.2407
Facsimile: 303.296.3956

Elizabeth L. Schilken (SBN 241231)
*SchilkenE@ballardspahr.com*
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

Michael R. O'Donnell
(admitted *pro hac vice*)
*MODonnell@RIKER.com*
Michael P. O'Mullan
(motion for admission *pro hac vice*
forthcoming)
*MOMullan@RIKER.com*
**RIKER DANZIG SCHERER HYLAND &
PERRETTI LLP**
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: 973.538.0800
Facsimile: 973.538.1984

*Attorneys for Defendant*
*Dun & Bradstreet Holdings, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Odette R. Batis, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>Dun & Bradstreet Holdings, Inc.,<br><br>               Defendant. | Case No. 3:22-cv-01924-MMC<br><br>**DECLARATION OF KARLOS PALMER IN SUPPORT OF DUN & BRADSTREET HOLDINGS, INC.'S SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CIV. PROC. CODE § 425.16 AND, IN THE ALTERNATIVE, MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(1) AND (6)**<br><br>Hon. Maxine M. Chesney<br><br>Complaint Filed: March 30, 2022<br><br>Date: August 5, 2022<br>Time: 9:00 a.m.<br>Location: San Francisco Courthouse<br>        Courtroom 7 – 19th Floor<br>        450 Golden Gate Avenue<br>        San Francisco, CA 94102 |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

I, KARLOS PALMER, declare as follows:

1.      I am the Chief Product Officer - Sales and Marketing Solutions at Dun & Bradstreet Holdings, Inc.  I make this Declaration based on personal knowledge and if called to do so would and could competently testify to these facts.

**D&B is one of the oldest publishers of business information.**

2.      Founded in 1841, and in continuous operation since, Dun & Bradstreet ("D&B") is one of the oldest and most prominent publishers of business information in the country.  D&B is a trusted global leader in business decision-making data and analytics.

3.      For decades, D&B's content has provided important insight to businesses and other market participants to help them evaluate and analyze business credit and make business decisions. To provide this useful commercial insight, D&B collects and curates an extensive amount of business-related information, and it applies its proprietary data analytics tools to organize and present that information to subscribers of its publications.

4.      D&B is most well-known for its credit reporting publications, which provide credit-related data concerning businesses.  In addition to these credit-related publications, D&B also publishes other content that facilitates national and global trade in other ways.  One such publication is D&B Hoovers.

**D&B Hoovers, one of the company's flagship publications, provides comprehensive information about businesses and other organizations.**

5.      D&B Hoovers is a business-to-business sales and marketing publication provided in the form of a searchable database.  It provides subscribers with continuously updated data and analytics about businesses, governmental and nongovernmental entities, and other organizations.

6.      D&B Hoovers also provides industry-level information, such as industry news, new business developments, lawsuits, analysts' reports, and other information.

7.      Company (and other entity) profiles in the D&B Hoovers database include, among other information, company histories, corporate family trees, financial information, stock data, company news and events, including mergers and acquisitions, court and corporate filings, and other useful business information.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

8.     D&B Hoovers also includes business contact profiles for corporate officers, directors, and other employees at businesses and other listed entities.  These profiles are short and the vast majority are limited to basic business contact information: name, job title, and business contact information (i.e., work phone and email address).  For some business contact profiles, where publicly reported compensation or biographical information is available from sources such as public company filed reports, such information may also be provided.

9.     The D&B Hoovers publication provides searchable and actionable intelligence about businesses that users can use through search and save functions and proprietary data analytics features.  Our subscribers tell us that D&B Hoovers is a valuable research tool they use to meet many of their business needs, such as assessing the size of a particular market, determining which companies are likely most interested in their products and services, and identifying decision-makers at businesses.

10.    D&B continuously updates its D&B Hoovers database, adding new data through extensive effort and expense.

11.    Subscribers rely on the comprehensive business information in the D&B Hoovers database as a research tool to make well-founded business decisions, and to research, analyze and market to businesses and other organizations throughout the globe.  In this way, D&B Hoovers facilitates domestic and international commerce.

**Information relating to individuals in D&B Hoovers is business-related information only.**

12.    The information pertaining to individuals identified in D&B Hoovers—i.e., the persons described in Paragraph 8 above—is business-related information *only*.  D&B Hoovers does not contain personal or private information about individuals, such as social security number, home address, home phone, personal cell phone, personal email address, marital status, or nonpublic financial information.  D&B Hoovers is a business database offering business-related information only.

13.    Moreover, much of the business-related information published in D&B Hoovers is already in the public domain, such as information published on LinkedIn profiles and other

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

public-facing social media pages, employer websites, corporate filings, and official federal, state and local records.  D&B also obtains business information from third-party data providers and others.

14.    Plaintiff purports to describe certain information that is displayed by D&B Hoovers to its subscribers.  See Complaint ¶¶ 34-39.  It is true that, depending on the search terms used by a subscriber (or free trial user) in D&B Hoovers, the search results might return certain information about Plaintiff in her capacity as the librarian for the City of Richmond, California.  Plaintiff's description of the information that is displayed, however, is inaccurate and misleading.

15.    According to the Complaint at paragraph 34, the D&B Hoovers profile for the Plaintiff appears as follows:



The Complaint says Plaintiff's counsel redacted from this screenshot "Ms. Batis' phone number."  While the redacted information is, in fact, a phone number, it is not a phone number for Plaintiff in her personal capacity.  It is the City of Richmond's phone number.

16.    The Complaint goes on, at paragraphs 35-36, to purportedly describe additional information about individuals like the Plaintiff that is displayed in Hoovers.  Paragraph 36 contains this screenshot, which relates not to Plaintiff but purportedly to "an unnamed class member"[1]:

---

[1] My understanding is that the unnamed class members in this case are all in California. As the screenshot relates to someone working for a company located in New Albany, Ohio, this statement in the Complaint appears to be inaccurate.  It is also worth noting that the screenshot captures an earlier version of the database.

DECLARATION OF KARLOS PALMER - 22-cv-01924-MMC

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  Plaintiff alleges that this displayed information reflects "additional personal information about

16  [the unnamed class member], including the identities of [his/her] work colleagues and 'Triggers',

17  which are events in [his/her] life that D&B Hoovers believes 'represent selling opportunities.'"

18  This description is an inaccurate characterization of the screenshot and the information available

19  in Hoovers.

20      17.     In fact, "Triggers" have nothing to do with the "life" of an individual whose

21  profile appears in D&B Hoovers.  Instead, Triggers relate to business or industry events.  In

22  D&B's nomenclature, the term "Trigger" has two meanings.  A "Trigger" is an alert that a

23  subscriber can set up for themselves to be alerted to certain types of business events as

24  information about those events is obtained by D&B Hoovers.  For example, a bookshelf

25  company that subscribes to D&B Hoovers might set up a Trigger to alert them whenever there is

26  a news report about a new library opening, as this would be a new selling opportunity for the

27  bookshelf company.  D&B also uses the term "Trigger" to describe the recent business or

28  industry events themselves.

DECLARATION OF KARLOS PALMER - 22-cv-01924-MMC

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

18.     The reason why the word "Triggers" appears in the left side of the screenshot is because it is contained within a menu bar that is displayed to the subscriber whenever they are looking at information relating to a particular business.  That menu bar would appear whether the subscriber was looking at information about an individual working at the business (as in the screenshot) or at other information relating to that business.  This enhances the functionality of D&B Hoovers; it permits subscribers to easily cross-reference information about a company whenever they are at *any* landing page within D&B Hoovers about that company—whether the page is about the Director of Market Research at the company (as in the screenshot) or about something else related to the company, such as the company description, its products and operations, its corporate family, etc.

19.     The reason why "Triggers" appears at the bottom of the screenshot with the number "35" is because the particular New Albany, Ohio business identified in the screenshot had 35 related Triggers.  Thus, Triggers are not "events in Ms. Batis' [or another individual's] life that D&B Hoovers believes 'represent selling opportunities.'"  Compl. ¶ 35.  This is an entirely fanciful description of the screenshot.  D&B Hoovers does not publish *any* information that reasonably can be described in that fashion.  D&B Hoovers is not interested in purely personal events that happen in the lives of individuals, and it does not collect or display such information to its subscribers.  The only exception to this is if there is a newsworthy event involving a CEO or senior leader of a company, such as a CEO leaving the business or being convicted of a crime.  That information may be displayed to a subscriber because it is useful insight *about the health of a business*.

20.     The reference to "Colleagues" with the number "270" at the bottom of the screenshot in Paragraph 36 shows the subscriber that there are 270 other individuals related to the New Albany, Ohio business that are in the D&B Hoovers database.

**D&B Hoovers subscribers conduct searches to learn information about businesses, in order to help the subscribers' own businesses.**

21.     Subscribers use D&B Hoovers to find information helpful to the subscriber's own business.  Thus it is a business-to-business information resource.  For example, a subscriber who makes bookshelves might search the D&B Hoovers database for all libraries in the United States. The search results would display all libraries in the United States that are contained in the database.  If the subscriber selects a particular library, the subscriber would have access to all of the comprehensive information that D&B Hoovers provides for that library. If the subscriber clicked on "Site Contacts" in the left-side menu bar (see the screenshot in Complaint Paragraph 36 above), he or she would be taken to a list of all of the contacts D&B Hoovers has for that library – i.e., individuals associated with operating that library.  And if the subscriber clicked on a particular contact in the resulting list, he or she would be taken to a page that looks like the screenshot in Paragraph 36, showing business contact information for that person.  Again, that information is business information only.  See Paragraph 8 above.

**D&B offers free trials of its D&B Hoovers publication to potential subscribers.**

22.     D&B offers free trial access to D&B Hoovers to allow potential subscribers to understand D&B Hoovers capabilities.  This is a common and necessary practice by publishers, especially in the digital age. Without a trial offer capability, D&B would be unable to demonstrate to non-subscribers how its publication—a comprehensive database containing information that can be sorted and analyzed in a variety of ways—works.

23.     Plaintiff includes allegations about the D&B Hoovers free trial in her Complaint at Paragraphs 37-40.  To the extent her description suggests or implies that free trial users are limited to conducting searches for individual persons, that is incorrect.  While users of the free trial can certainly look to see whether a particular person is mentioned in D&B Hoovers, they may type in whatever search terms they want, for example the name of a business type ("library"), an industry area ("information resources"), a product ("bookshelves"), a service ("internet access"), etc., or limitless combinations of such terms.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

24.     During the free trial period, the prospective subscriber can search D&B Hoovers as much as they wish.  When D&B Hoovers offers results in response to a search, the prospective subscriber might be told they must purchase a subscription in order to go deeper and get the underlying information that is summarily displayed in the results list.

25.     To continue using the D&B Hoovers database after the free trial has ended, a free trial user must purchase a D&B Hoovers subscription.

26.     Plaintiff alleges the "sole purpose" of D&B Hoovers containing her name, job title, and business contact information is "to solicit subscriptions" to D&B Hoovers.  See Complt. ¶ 43.  That is false.  In fact, the sole purpose for D&B including Plaintiff's information in D&B Hoovers is to provide useful business information to subscribers of the publication as described above—the same reason why *any* data is included in D&B Hoovers.

27.     Prospective subscribers using the free trial get the same search results in response to queries that subscribers do.  (As set forth above, to dig deeper into the search results, the prospective subscriber might then be required to purchase a subscription.)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 30, 2022 at *Austin, Texas.*

Karlos Palmer

Ashley I. Kissinger (SBN 193693)
*KissingerA@ballardspahr.com*
**BALLARD SPAHR LLP**
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.376.2407
Facsimile: 303.296.3956

Elizabeth L. Schilken (SBN 241231)
*SchilkenE@ballardspahr.com*
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

Michael R. O'Donnell
(admitted *pro hac vice*)
*MODonnell@RIKER.com*
Michael P. O'Mullan
(motion for admission *pro hac vice*
forthcoming)
*MOMullan@RIKER.com*
**RIKER DANZIG LLP**
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: 973.538.0800
Facsimile: 973.538.1984

*Attorneys for Defendant*
*Dun & Bradstreet Holdings, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ODETTE R. BATIS,<br><br>    Plaintiff,<br><br>v.<br><br>DUN & BRADSTREET HOLDINGS, INC.<br>    Defendant. | Case No. 3:22-cv-01924-MMC<br><br>**DECLARATION OF RYAN L. O'NEILL AND EXHIBITS 1-5 IN SUPPORT OF DUN & BRADSTREET HOLDINGS, INC.'S SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. civ. proc. CODE § 425.16 AND, IN THE ALTERNATIVE, MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(1) AND (6)**<br><br>Hon. Maxine M. Chesney<br><br>Complaint Filed: March 30, 2022<br><br>Date: August 5, 2022<br>Time: 9:00 a.m.<br>Location: San Francisco Courthouse<br>        Courtroom 7 – 19th Floor<br>        450 Golden Gate Avenue<br>        San Francisco, CA 94102 |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

I, Ryan O'Neill, declare as follows:

1. I am a partner at Riker Danzig LLP, counsel for the Defendant in this action. I submit this declaration in support of the Motion to Strike Plaintiff's Complaint pursuant to Cal. Code Civ. Proc. § 425.16 filed by Defendant (the "Motion"). I am more than 18 years old, have personal knowledge of the facts relayed below, and if called upon to do so could and would testify competently to them.

2. I have personally accessed webpages on which information regarding Plaintiff Otis Batis's employment at the Richmond City Library is displayed and accessible to the public.

3. On June 29, 2022, I searched for the name "Odette Batis" in Google. I then used an online application to convert some of the search results into a reader-friendly PDF format. A true and correct copy of the PDF download of those Google search results is attached to this declaration as Defendant's **Exhibit 1** in support of the Motion.

4. As reflected in Exhibit 1, one of the items in the Google search results is a link to Ms. Batis's LinkedIn profile, at https://www.linkedin.com/in/odette-batis-14473823, the search-generated preview of which shows Ms. Batis's full name, job title, and employer.

5. Also, Ms. Batis's name, employment and pension information are available at https://transparentcalifornia.com/pensions/2020/calpers/odette-r-batis/. According to the website, "Transparent California" is maintained by the Nevada Policy Research Institute "as a public service[,] dedicated to providing accurate, comprehensive, and easily searchable information on the compensation of public employees in California," and "[a]ll information on Transparent California comes directly from public records request and is public information." *See* https://transparentcalifornia.com/pages/about/ and https://transparentcalifornia.com/pages/faq/.

6. On June 29, 2022, I personally accessed the first URL in Paragraph 5 above, reviewed the employment and pension data provided for Ms. Batis, and used an online application to convert the information displayed on that URL into a reader-friendly PDF format. A true and correct copy of the PDF download of the data is attached to this declaration as Defendant's **Exhibit 2** in support of the Motion.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

DECLARATION OF RYAN L. O'NEILL – 22-cv-01924-MMC

7.      Ms. Batis's name and employment information are also published in at least two library association publications, including two articles attributed to the California Library Association, available at https://www.cla-net.org/page/500 (announcing that Odette Batis, of Richmond Public Library, published an article), and at https://cdn.ymaws.com/www.cla-net.org/resource/resmgr/imported/Briefings%20October%202012.pdf (providing Ms. Batis's contact information, including her title and work phone number).

8.      On June 29, 2022, I personally accessed both URLs in Paragraph 7 above, reviewed the publications, and used an online application to convert both publications into a reader-friendly PDF format. True and correct copies of the PDF downloads of the publications are attached to this declaration as Defendant's **Exhibit 3 and Exhibit 4**, respectively, in support of the Motion.

9.      Finally, Ms. Batis's name, employer, and complete work contact information, including work phone number and email address, is reflected in a copy of a City of Richmond grant application, located at http://www.ci.richmond.ca.us/DocumentCenter/View/5084/Vomela-Speciality-Company--230000?bidId=. The grant was published by the City of Richmond on its website, amongst other applications.

10.     On June 29, 2022, I personally accessed that URL, reviewed the grant application, and used an online application to convert the article into a reader-friendly PDF format. A true and correct copy of the PDF download of the application is attached to this declaration as Defendant's **Exhibit 5** in support of the Motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 30, 2022 at ____5:51 p.m._____.

*Ryan L. O'Neill*

Ryan L. O'Neill

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915

**EXHIBIT 1**


     odette batis      ✕    | 🔍

### Odette Batis - Bookmobile Librarian - Richmond Public Library

Richmond, California, United States · Bookmobile Librarian · Richmond Public Library

View **Odette Batis'** profile on LinkedIn, the world's professional community. Odette has 2 jobs listed on their profile. See the complete profile on ...

https://www.linkedin.com › odette-batis-a3653338    ⋮

### Odette Batis - Librarian - Richmond Public Library | LinkedIn

Richmond, California, United States · Librarian · Richmond Public Library

View **Odette Batis'** profile on LinkedIn, the world's professional community. Odette has 1 job listed on their profile. See the complete profile on ...

https://www.legacy.com › obituaries › sfgate › name    ⋮

### Odette Batis Obituary (2011) - San Francisco, CA - Legacy.com

**Odette** Bertucci **Batis** Died peacefully on October 3rd, in Atlanta, Georgia. **Batis** was born in 1923, in San Francisco, to Victor and Evelyn Bertucci.

https://www.officialusa.com › ... › Batirbek — Batista    ⋮

### Odette Batis — OfficialUSA.com Records

Personal Profile for **Odette Batis** from Atlanta, GA, addresses, phone numbers, emails. ... Odette's current address is 1564 Fitzgerald Drv, Pinole, CA 94564.

**EXHIBIT 2**

# TRANSPARENT CALIFORNIA

California's largest public pay and pension database

Stay updated by joining our mailing list!

## Odette R Batis

| | |
|---|---|
| **Pension:** | $13,119.84 |
| **Benefits:** | Not provided |
| **Total pension & benefits amount:** | $13,119.84 |
| **Last Employer:** | CITY OF RICHMOND |
| **Years of Service** | 5.91 |
| **Year of Retirement** | 2013 |

**EXHIBIT 3**

# INSIDER ARTICLE [OCTOBER 2012] [09/25/12] (CLA MEMBER NEWS)

Share (https://www.addthis.com/bookmark.php?v=250&pub=yourmembership)  |

## CLA Member News

**Evelyn Shimazu Lee**, Head of Community Relations for University Libraries, Azusa Pacific University, was the 2011-2012 recipient of the Azusa Pacific University's Emerging Scholar award. She presented "Plagiarism Pedagogy and Academic Integrity" with USC's Avril Cunningham at the ACL National conference in March 2012. And she presented *Faith and Hope: The Story of our Nisei Heroes*, a documentary film she produced, at the National Joint Conference of Librarians of Color in September … **Diane Duquette** retired in March 2012 after 33 years as a librarian. Her career included 25 years as Kern County Library's Director of Libraries and County Librarian, during which time the library was honored with many awards including an All America City Award … **Newport Beach Public Library** is presenting "Searching for Democracy," an interactive program and display that debuted in April and includes community discussions of democracy, author forums, and a program inviting adult learners to write an essay on America and democracy … **Odette Batis** of Richmond Public Library published an article on grant writing in Volume 10, Issue 2 of *Children & Libraries* … **Elizabeth Kalen**, author of the recently-published *Mostly Manga*, has been hired as the Children's Librarian for the Fort Bragg and Coast Community Libraries in Mendocino County … **Cathy Crosthwaite**, previously with Roseville Public Library, is now the system-wide Volunteer Services Coordinator for Sacramento Public Library …



Members of the Inland Valley Symphony and President of the Symphony's Board of Directors

From left to right: Gi Gi Paddock, flute; Kara Brennan Wuchner, flute; Kate Prestia-Schaub. flute; YiYi Ku, Piano; Alana Joos, President, IV Symphony Board of Directors and library liaison; Mark Brownlee, clarinet; and, Brett Sharp, clarinet.

Photo credit: Sandra Brautigam

**Suzanna Conrad** was appointed Digital Initiatives Librarian at Cal Poly Pomona … In September, **Pasadena Public Library** celebrated Constitution Month with a month-long series of events at Central Library, including feature films, exhibits, and a first-person interpretation of the Jefferson and Hamilton battles over the interpretation of the constitution … **Susan McKinlay** completed the Medical Library Association's Consumer Health Information Specialization Program's class, Health and Wellness @ the Library … **Julie Wright** is the recipient of the University of San Diego's Manuel Hernandez Staff Employee of the Year award … The **Riverside County Library System's Grace Mellman Library** is hosting a series of eight classical music ensembles in the Library's Community Room, in partnership with the Inland Valley Symphony … **Irene Korber** was recently hired as Reference/Subject Librarian at CSU Chico's Meriam Library where she will serve as the department liaison for education, kinesiology, recreation, and undergraduate education … SJSU student, **Ioana L. Ene**, was awarded the Larry N. Vanderhoef scholarship through the staff assembly at UC Davis … San Diego County Library's **Laura Zuckerman** was featured in the "Meet Your Neighbor" section of the 4S Ranch newspaper … **Sacramento Public Library's Southgate Branch** has seen a 47% increase in summer reading sign-ups and finishers through its Family Place partnerships. Since the inception of Family Place, the library has created partnerships with Head Start, daycares, schools, and local organizations, resulting in 2,123 sign-ups, 1,019 finishers, and a total of 5,859 books read.

# EXHIBIT 4



CALIFORNIA
LIBRARY
ASSOCIATION

# Richmond Library Hosts Bookmark Design Contest

We do a bookmark program every year on the Richmond Bookmobile. Lately it has grown very popular (400 entries). The bookmobile visits elementary schools every week in Richmond. The program involves children making a bookmark design. The flyer is the application. The rules are simple, it must fit in the lines and it must be in black and white, no color (the printing is too expensive). We prefer a library/reading theme but they are free to draw anything. The upper age limit is twelve for this contest.



We start handing out the flyers the month before spring break in our local schools. The participants may turn the applications in at once, but they can have up to three weeks to work on the design. Some of the better entries took loads of time. My staff divides up the entries by age; like age compared to like age and we pick a winner. Each age has a winner; a $10 gift certificate from Barnes and Noble, fifty copies of their winning bookmark, and a certificate in a nice folder for their wall. We have a raffle of all the winners for an iPod shuffle.

Children love this contest. Parents love this contest. I had a mom tell me that we were so kind to do a drawing contest, her daughter loves to draw.

**Odette Batis**, Bookmobile Librarian
Richmond Public Library
325 Civic Center Plaza
Richmond, CA 94804
510-307-8089

California Library Association
Youth Services Interest Group

# EXHIBIT 5

## CITY OF RICHMOND
## SHORT FORM CONTRACT

| Department: Library & Cultural Services | Project Manager: Odette Batis |
|---|---|
| Project Manager E-mail: odette_batis@ci.richmond.ca.us | Project Manager Phone No: (510) 307-8089 |
| PR No: 1648      Vendor No: 6529 | P.O./Contract No: 20900460 |

**Description of Services:**

Manufacture 3M vinyl vehicle wrap for 35 foot bookmobile. Install to flat surfaces and curves. Spot color match and color correction. Remove existing lettering. Includes 5 - 7 year warranty.

1. **Parties.** The parties to this Agreement are the City of Richmond (herein referred to as the "City") and the following named Contractor:

(Company) Vomela Specialty Company

(Street Address) 380 St. Peter Street #705

(City State, Zip Code) St Paul, MN 55102

(Contract Person) Don Pitts

(E-mail) dpitts@corporateidentity.net

(Telephone) (650) 877-8000

(Fax Number) 650-877-0965

Richmond Business License No. 40023248

Expiration Date: 12/31/2009

2. **Term.** The effective date of this Agreement is April 1, 2009
and it terminates June 30, 2010
unless sooner terminated as provided herein.

3. **Payment Limit.** City's total payment to Contractor under this Agreement shall not exceed **($10,000.00)** including expenses unless a contract amendment has been approved by the City Council or City Manager.

4. **City's Obligations.** City shall pay the Contractor a not to exceed amount of $ 9,700.00
as total payment for all services rendered.

5. **Location of Services.** Contractor shall perform the services set forth herein at the following location:

1342 San Mateo Avenue, South San Francisco, CA

6. **Contractor's Obligations.**

To the satisfaction of the City's Project Manager, Contractor shall provide the following services:
Per attached proposal dated 4/6/2009 in the

amount of $9,412.34. Incorporated into this

contract by this reference.

7. **Supplemental Conditions.** This Contract is subject to the Supplemental Conditions and Special Conditions (if applicable) attached hereto, which are incorporated herein by this reference.

8. **Insurance Provisions.** This Contract is subject to the Insurance Provisions which are attached hereto and are incorporated herein by this reference.

9. **Signatures.** These signatures attest the parties' agreement hereto:

CITY:

CITY OF RICHMOND, CA
a municipal corporation

By: _____

City Manager or Designee      Signature

CONTRACTOR:

By: _____ _____

Signature               Date: