Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ODETTE R. BATIS, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>DUN & BRADSTREET HOLDINGS, INC.,<br><br>    Defendant. | Case No.: 3:22-cv-01924-MMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE OR DISMISS**<br><br>Complaint Filed: Mar. 30, 2022<br><br>Judge Maxine M. Chesney |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   LEGAL STANDARD ...........................................................................................2

III.  ARGUMENT.........................................................................................................2

    A.  Multiple Courts Have Rejected D&B's Arguments. ........................................2

        1.  Plaintiff does not seek to prevent publication of D&B's database...................2

        2.  Many Courts Have Found Article III Standing in Similar Cases. ....................4

    B.  D&B's Anti-SLAPP Motion to Strike Should be Denied. ...............................4

        1.  D&B's advertisements do not concern a public issue. .....................................5

        2.  Plaintiff's claims arise from D&B's use of the profiles in advertisements, and advertisements are not protected by the anti-SLAPP statute. ....................7

        3.  Plaintiff made a prima facie showing of facts. ................................................7

    C.  D&B's Commercial Advertisements Are Not Protected by the First Amendment............8

        1.  D&B's Advertisements Incorporating Plaintiff's Persona are Commercial Speech. ........................................................................................8

        2.  D&B's advertisements do not lose their commercial character merely because they advertise a service that includes informational elements...........11

        3.  D&B's misleading advertisements are not entitled to protection, and even if they were, plaintiff's claims would easily survive intermediate scrutiny. .........................................................................................................13

        4.  D&B's Informational Database and Real-Time Tracking Services are Not "Transformative" of Plaintiff's Persona. ...................................................13

        5.  Even Were D&B's Affirmative Defense Under the First Amendment Viable as a Matter of Law, It Would Raise Issues of Fact. ............................15

    D.  Plaintiff Has Properly Plead Her Claims Under California Law.......................15

    E.  Plaintiff Has Alleged Injury and Article III Standing. ....................................17

        1.  Plaintiff alleges economic injury from D&B's exploitation of, and profiting from, her persona. ...........................................................................18

        2.  Plaintiff alleges injury from infringement of her intellectual property. ..........20

        3.  Plaintiff alleges concrete injury from the denial of her statutory right to control the commercial use of her name and persona. ...................................21

4.  Plaintiff alleged mental injury. ...........................................................23

IV.    CONCLUSION ...........................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Abdul–Jabbar v. GMC,*
85 F.3d 407 (9th Cir.1996) ...................................................................................18

*Ariix, LLC v. NutriSearch Corp.*
985 F.3d 1107 (9th Cir. 2021) ..............................................................................13

*Bergen v. Martindale-Hubbell, Inc.,*
285 S.E.2d 6 (Ga. 1981) ........................................................................................12

*Bolger v. Youngs Drug Prods. Corp.,*
463 U.S. 60 (1983) ..........................................................................9, 10, 12, 14

*Bonilla v. Ancestry.com Operations Inc.,*
2021 WL 5795306 (N.D. Ill. Dec. 7, 2021) ...............................................4, 21, 24

*Boshears v. PeopleConnect,*
No. 21-cv-01222-MJP, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022) ...........3, 8

*C.f. Nygard, Inc. v. Uusi-Kerttula,*
159 Cal. App. 4th 1027 (Cal. Ct. App. 2008) ..........................................................6

*Calhoun v. Google, LLC,*
526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................................21

*Callahan v. Ancestry,*
2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ...............................................3, 4, 7, 21

*Callahan v. PeopleConnect,*
No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ..........3, 4, 7, 10, 19, 20, 21

*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York,*
447 U.S. 557 (1980) ...............................................................................................14

*Cf. De Havilland v. FX Networks,*
LLC, 21 Cal. App. 5th 845 (Cal. Ct. App. 2018) ..............................................13, 15

*Cf. Integrated Healthcare Holdings, Inc. v. Fitzgibbons,*
140 Cal. App. 4th 515 (Cal. Ct. App. 2006) ............................................................6

*Charles v. City of Los Angeles, Mun. Corp.,*
697 F.3d 1146 (9th Cir. 2012) ..........................................................................12, 13

*Cher v. Forum International, Ltd.,*
692 F.2d 634 (9th Cir. 1982) .................................................................................13

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) ................................................................................15, 22

*Daly v. Viacom*,
238 F. Supp. 2d 1118 (N.D. Cal. 2002) ...............................................................13

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ...............................................................................21

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ...............................................................................11

*Dora v. Frontline Video, Inc.*,
15 Cal. App. 4th 536 (Cal. Ct. App. 1993) ..........................................................16

*DoubleVerify Inc.*,
7 Cal.5th 133 (Cal. 2019) .......................................................................................6

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ...............................................................17, 19, 25

*Eastwood v. Superior Court*,
149 Cal. App. 3d 409 (Cal. Ct. App. 1983) .............................2, 20, 22, 24

*ETW Corp. v. Jireh Publishing, Inc.*,
332 F.3d 915 (6th Cir. 2003) ...............................................................................22

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ..............................16, 17, 18, 23, 25

*Gabiola v. Sarid*,
No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017) .....................3, 4

*Gionfriddo v. Major League Baseball*,
94 Cal. App. 4th 400 (2001) ...............................................................................16

*Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*,
424 F. Supp. 267 (E.D. Va. 1976) .......................................................................12

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2009) .................................................5, 8, 15, 16, 17

*In re Clearview AI, Inc. Consumer Privacy Litig.*,
No. 21-cv-0135, --- F. Supp. 3d ---, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022) ......................20

*In re Facebook Privacy Litig.*,
72 F. App'x 494 (9th Cir. 2014) ..........................................................................21

*In re Google, Inc. Privacy Policy Litig.*
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)................................................................21

*Keller v. Electronic Arts Inc.*,
724 F.3d 1268 (9th Cir. 2013) ...............................................................................15

*Kellman v. Spokeo*,
No. 21-cv-08976, --- F. Supp. 3d ---, 2022 WL 1157500 (N.D. Cal. April 19, 2022)...3, 4, 10, 11, 15, 19, 21, 22, 23, 25

*Knapke v. PeopleConnect*,
553 F. Supp. 3d 865 (W.D. Wash. 2021),
*rev'd and remanded on other grounds*, No. 21-35690 (9th Cir. Jun. 29, 2022)........3, 4, 10, 14, 23

*Kolebuck-Utz v. Whitepages Inc.*,
No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ....................................3

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ..................................................................................2

*Lukis v. Whitepages Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020)........................................3, 4, 10, 11, 18, 23

*Lukis v. Whitepages, Inc.*,
542 F. Supp. 3d 831 (N.D. Ill. 2020) ........................................................................3

*Manzarek v. Marine*,
519 F.3d 1025 (9th Cir. 2008) ................................................................................2

*Martinez v. ZoomInfo*,
No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. April 11, 2022)............3, 4, 7, 8, 18, 20, 21, 25

*Midler v. Ford Motor Co.*,
849 F.2d 460 (9th Cir. 1988) ...............................................................................22

*Miller v. Collectors Univ.*,
159 Cal. App. 4th 988 (Cal. Ct. App. 2008)............................................................25

*Miller v. Glenn Miller Prods., Inc.*,
454 F.3d 975 (9th Cir. 2006) ...............................................................................23

*Montana v. San Jose Mercury News, Inc.*,
34 Cal. App. 4th 790 (1995) ................................................................................17

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
498 F.2d 821 (9th Cir. 1974) ..........................................................................21, 25

*Nayab v. Capital One Bank*,
942 F.3d 480 (9th Cir. 2019) ..................................................................2

*Newcombe v. Adolf Coors Company*,
157 F.3d 686 (9th Cir. 1998) .................................................................19

*Orthopedic Sys., Inc. v. Schlein*,
202 Cal. App. 4th 529 (Cal. Ct. App. 2012) .........................................16

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ..............................................................24

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
946 F. Supp. 2d 957 (N.D. Cal. 2013) ....................................................6

*Roe v. Amazon.com*,
170 F. Supp. 3d 1028 (S.D. Ohio 2016) ................................................24

*See L.A. Taxi Coop., Inc. v. Indep. Taxi Owners Ass'n of L.A.*,
239 Cal. App. 4th 918 (2015) .................................................................8

*Sessa v. Ancestry.com*,
561 F. Supp. 3d 1008 (D. Nev. Spt. 16, 2021) .........................3, 4, 7, 9, 19, 21, 23, 24

*Siegel v. ZoomInfo Technologies, Inc.*,
No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021)..............3, 10, 17

*Spokeo v. Robins*,
578 U.S. 330 (2016) ..............................................................................19

*Timed Out, LLC v. Youabian, Inc.*,
229 Cal. App. 4th 1001 (Cal. Ct. App. 2014) .......................................25

*Tovar v. U.S. Postal Service*,
3 F.3d 1271 (9th Cir. 1993) ...................................................................16

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021).............................................................4, 19, 21, 22

*Westminster Presbyterian Church of Muncie v. Yonghong Cheng*,
992 N.E.2d 859 (Ind. Ct. App. 2013) ...................................................24

*Zacchini v. Scripps-Howard Broadcasting Co.*,433 U.S. 562 (1977) ............24

**Statutes**

Cal. Civ. Code § 3344 ...............................................................1, 17, 19, 23

Cal. Civ. Proc. Code § 425.16 ................................................................5

**Other Authorities**

J. Thomas McCarthy,
McCarthy on Trademarks and Unfair Competition, § 18:43 (4th ed. 2005) ................................23

## I. INTRODUCTION

Dun & Bradstreet Holdings, Inc. is in the business of aggregating and selling personal information without consent. D&B obtains the names, contact information, job titles, places of work, cities of residence, colleagues' identities, and "triggers" (life events D&B believes "represent selling opportunities") of millions of individuals without their permission. Dkt. No. 1 ("Compl."), ¶¶7, 33-36. D&B organized this personal information into profiles representing each individual's identity and persona. *Id.*, ¶¶33-36, 38. D&B distributed these profiles publicly on the Internet to advertise subscriptions to D&B services. *Id.*, ¶¶34-40. Users who search for an individual on D&B's landing page receive the profile for that individual in response. *Id.*, ¶38. Users who attempt to search for and view individuals' profiles after a free trial period expires, or who click the "Download" button on an individual's profile during the free trial period, are informed they must purchase a subscription, which costs more than $10,000 per year. *Id.*, ¶¶39-41. D&B advertises that, among other services, subscribers receive the ability to search, view, and download Plaintiff's profile and those of millions of Class members, along with the ability to set up "real-time alerts" and "personalized buyer intent models" that notify the subscriber when Plaintiff or another Class member changes jobs or searches on the Internet for a product or service. *Id.*, ¶42. D&B advertises its subscription services to salespeople, who use its directory and related services to target individuals with unsolicited promotions. *See id.*, ¶¶18, 42 50.

Consequently, D&B stole intellectual property that belongs to Plaintiff and the Class: their personas. California's right of publicity statute prohibits the knowing use of a person's "name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344. The California tort of misappropriation of name or likeness forbids the "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 416 (Cal. Ct. App. 1983). California law protects the right of individuals to refuse consent to the commercial

1  use of their personas. By using Plaintiff's and Class members' personas without their consent to
2  advertise D&B subscriptions, D&B harmed Plaintiff and the Class by taking their intellectual
3  property; violating their protected privacy rights; unjustly profiting from its use of their personas;
4  and disturbing their peace of mind.

## II.  LEGAL STANDARD

On a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). A claim survives if it is "plausible on its face." *Nayab v. Capital One Bank*, 942 F.3d 480, 485 (9th Cir. 2019) (quotation omitted). The Court's review on a motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

## III.  ARGUMENT

### A.  Multiple Courts Have Rejected D&B's Arguments.

#### 1.  Plaintiff does not seek to prevent publication of D&B's database.

Three of the four arguments in D&B's motion to strike or dismiss rest on the false premise that Plaintiff's claims seek to prevent D&B from publishing its directory of personal information. *See, e.g.*, Dkt. No. 18, at *19 (falsely asserting that Plaintiff "seek[s] to impose civil liability for the mere inclusion" of her personal information "in [D&B's] database.") On the contrary, Plaintiff seeks to prevent D&B from using her personal information to advertise subscriptions to a service she does not use or endorse. *See* Compl., ¶3. It is the <u>use to advertise</u> that gives rise to the claims, not D&B's distribution of the underlying directory. Were D&B to cease offering access to Plaintiff's profile as part of a promotional free trial and remove the "Download" button on her profile that generates a pop-up prompting a user to purchase a subscription, D&B would comply with the law. Similarly, had D&B obtained Plaintiff's consent prior to using her personal information to advertise, it would have complied with the law. What Plaintiff seeks to prevent are

the unauthorized advertisements incorporating her persona. She has no quarrel with D&B's distribution of its directory to its subscribers.

Recognizing this distinction between *providing access to personal information*, which does not give rise to right of publicity claims, and *using personal information to advertise*, which does, many courts in this District and others have rejected D&B's arguments. These courts denied motions to strike or to dismiss in right of publicity cases against websites that, like D&B, provide searchable trial access to profiles of personal information as a means of advertising subscriptions. Five courts in such cases have denied anti-SLAPP motions.[1] Seven courts in such cases have rejected attempts to dismiss on First Amendment grounds.[2] And seven courts in such cases have rejected the application of California's "public affairs" exception or similar exceptions found in other states' right of publicity laws.[3] No courts in such cases have accepted D&B's arguments.

---

[1] *Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630, at *7 (W.D. Wash. April 11, 2022); *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079, at *21 (N.D. Cal. Nov. 1, 2021); *Boshears v. PeopleConnect*, No. 21-cv-01222-MJP, 2022 WL 888300, at *7 (W.D. Wash Mar. 25, 2022); *Callahan v. Ancestry*, 2021 WL 783524, at *7 (N.D. Cal. Mar. 1, 2021); *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1034 (D. Nev. Spt. 16, 2021).

[2] *Kellman v. Spokeo*, No. 21-cv-08976, --- F. Supp. 3d ---, 2022 WL 1157500, at *14-15 (N.D. Cal. April 19, 2022); *Callahan v. PeopleConnect*, 2021 WL 5050079, at *21; *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 878-80 (W.D. Wash. 2021), *rev'd and remanded on other grounds*, No. 21-35690 (9th Cir. Jun. 29, 2022); *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020) (order denying motion to dismiss); *Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 831, 843-44 (N.D. Ill. 2020) (order denying summary judgment motion); *Kolebuck-Utz v. Whitepages Inc.*, No. 21-cv-53, 2021 WL 1575219, at *2-3 (W.D. Wash. Apr. 22, 2021); *Gabiola v. Sarid*, No. 16-cv-02076, 2017 WL 4264000, at *5 (N.D. Ill. Sep. 26, 2017); *Siegel v. ZoomInfo Technologies, Inc.*, No. 21-cv-2032, 2021 WL 4306148, at *4 (N.D. Ill. Sep. 22, 2021).

[3] *Callahan v. PeopleConnect*, 2021 WL 5050079 at *18; *Martinez*, 2022 WL 1078630 at *6; *Knapke*, 553 F. Supp. 3d at 878; *Sessa*, 561 F. Supp. 3d at 1030-31; *Bonilla v. Ancestry.com Operations Inc.*, 2021 WL 5795306, at *7 (N.D. Ill. Dec. 7, 2021); *Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *7; *Gabiola*, 2017 WL 4264000, at *6.

---

**2. Many Courts Have Found Article III Standing in Similar Cases.**

Similarly, of the seven district courts that have considered D&B's standing argument, six have rejected it, ruling that plaintiffs have Article III standing to assert right of publicity and misappropriation of name or likeness claims against websites that provide free or trial access to profiles of personal information as a means of advertising subscriptions.[4] Plaintiff's counsel are aware of only one decision in which a court facing similar facts found the plaintiffs lacked standing. *See Callahan v. Ancestry.com Inc.*, Case No. 20-cv-08437-LB, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021). As detailed in Part III(E) below, the district courts in *Kellman*, *Martinez*, *Sessa*, *PeopleConnect*, and *Bonilla* explicitly considered and rejected the reasoning in *Callahan v. Ancestry* as inconsistent with controlling precedent, including the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021). In *Kellman*, Judge Orrick recently denied the defendant's motion to certify interlocutory appeal on the issue of standing, noting that "I explicitly disagreed to some extent with *Ancestry's* standing analysis . . . [and] I have not been alone in doing so." No. 3:21-cv-08976, Dkt. No. 45 (N.D. Cal. July 8, 2022) (citations omitted).

This Court should follow Judges Orrick, Pechman, Navarro, Chen, Kendall, Feinerman, Coleman, and Kocoras in rejecting D&B's arguments and denying its motion to strike or dismiss.

**B. D&B's Anti-SLAPP Motion to Strike Should be Denied.**

California's anti-SLAPP statute provides that a cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(a). A profile reporting an individual's name, place of work, and contact information is not speech "in connection with a public issue," nor is a service that tracks an individual's browsing history.

---

[4] *Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *4-6, *Martinez*, 2022 WL 1078630, at *2-6; *Callahan v. PeopleConnect*, 2021 WL 5050079, at *14-18; *Lukis v. Whitepages Inc.*, 2021 WL 3022319, at *3-4.

Further, plaintiff's claims arise from D&B's use of the profiles in commercial advertisements, not the profiles themselves, and commercial advertisements are exempted from the statute's coverage. For these reasons and the additional reasons below, D&B's anti-SLAPP motion should be denied.

### 1. D&B's advertisements do not concern a public issue.

D&B cannot meet its burden of showing that the advertisements incorporating Plaintiff's persona are "speech in direct connection with an issue of public concern." *See* Cal. Civ. Proc. Code § 425.16(e); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009) (burden rests with party asserting anti-SLAPP). California law establishes the following guiding principles:

> (1) "public interest" does not equate with mere curiosity;
>
> (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;
>
> (3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;
>
> (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and
>
> (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013) (citation omitted). Under these principles, D&B's profile containing Plaintiff's name, job title, and contact information is not speech about an issue of public concern. D&B distributes the profile only to salespeople who wish to contact Plaintiff with unsolicited commercial offers. *See* Compl., ¶¶6, 18. This is a "small specific audience" who use the profile for the commercial purpose of selling things, not to learn about a "matter of public interest." D&B fails to identify any matter of public interest to which Plaintiff's profile relates, instead relying on the general

claim that "[b]usiness information is information of legitimate public interest." Dkt. No. 18, at *6. This is precisely the sort of "broad and amorphous public interest" *Piping Rock* forbids.

D&B relies on the California Supreme Court's decision in *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133 (Cal. 2019), but that decision only confirms D&B's profiles are <u>not</u> speech on a matter of public concern. The Court concluded that a website's informational profiles were "too tenuously tethered" to any "issues of public interest" to qualify for anti-SLAPP protection. *Id.*, at 140. There, as here, the defendant "issued its reports not to the wider public . . . but privately, to a coterie of paying clients . . . [who] use the information . . . for their business purposes alone." *Id.*, at 153. There, as here, the defendant could not show its purely informational profiles "participate[d] in a larger public discussion" on any topic. *Id.*, at 140.

D&B cites three cases in which a court found speech in connection with the "public interest," but these cases serve only to demonstrate how far outside the standard Plaintiff's profile falls. The profile does not weigh in on an ongoing public debate. *Cf. Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 520-21 (Cal. Ct. App. 2006). Nor is it a magazine article about "a prominent . . . celebrity." *C.f. Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (Cal. Ct. App. 2008). Nor does it "concern an ongoing discussion regarding the financial well-being of a significant investment opportunity." *Cf. CALPERS v. Moody's Investors Service, Inc.*, 226 Cal. App. 4th 643, 660 (Cal. Ct. App. 2014).

Because profiles that advertise website subscriptions using individuals' personal information do not concern a "public issue," courts are unanimous in summarily denying anti-SLAPP motions on these facts. *See, e.g., Martinez*, 2022 WL 1078630, at *7 ("There is no evidence to suggest that [plaintiff's] persona is a matter of public interest"); *Sessa*, 561 F. Supp. 3d at 1035 ("the challenged advertising communications do not implicate matters of public concern"); *Ancestry*, 2021 WL 783524, at *11 (noting that the cases defendant relied on concerned "celebrities, public officials, or the public realm or more obvious public interest");

*PeopleConnect*, 2021 WL 5050079, at *21 (N.D. Cal. Nov. 1, 2021); *Ancestry*, 2021 WL 783524, at *7 (N.D. Cal. Mar. 1, 2021). D&B does not cite these cases, two of which are from this District.

Nor can D&B argue that the service being advertised is speech on an "issue of public concern" even if the profiles used to advertise it are not. D&B's service includes the ability to track Plaintiff's browsing history, including recent product searches, in real-time. Compl., ¶42. D&B does not argue, nor could it, that this intrusive and private information is a "public issue."

### 2. Plaintiff's claims arise from D&B's use of the profiles in advertisements, and advertisements are not protected by the anti-SLAPP statute.

Even were Plaintiff's profile speech on an issue of "public concern," the profile itself is not the "speech" from which Plaintiff's claim arises. Rather, Plaintiff's claim arises from D&B's commercial use of Plaintiff's profile to promote subscriptions via the free trial and promotional "Download" button. Under Cal. Civ. P. Code § 425.17(c), the anti-SLAPP statute excludes speech by defendants who are "in the business of selling . . . goods or services" that is "made for the purpose of . . . promoting . . . goods or services" and for which the intended audience is "an actual or potential buyer or customer." As alleged in the Complaint, D&B is in the business of selling subscriptions, its purpose in distributing Plaintiff's profile is selling subscriptions, and the intended audience is potential subscribers. Accordingly, anti-SLAPP does not apply. *See L.A. Taxi Coop., Inc. v. Indep. Taxi Owners Ass'n of L.A.*, 239 Cal. App. 4th 918, 927 (2015). Many courts have denied similar anti-SLAPP motions on the ground that using profiles of personal information to promote subscriptions is commercial speech that is not entitled to anti-SLAPP protection. *See, e.g.*, *Martinez*, 2022 WL 1078630, at *7 (denying California anti-SLAPP motion brought by direct competitor of D&B because "the speech at issue is commercial in nature and not protected speech"); *Boshears v. PeopleConnect*, 2022 WL 888300, at *7. Again, D&B fails to acknowledge these cases.

### 3. Plaintiff made a prima facie showing of facts.

Even had D&B met its burden with respect to the "public interest" prong, the motion would still fail because Plaintiff made a "prima facie showing of facts to sustain a favorable

judgment." *See Hilton*, 599 F.3d at 903 (9th Cir. 2009) (quotations omitted). As demonstrated throughout this opposition, the Complaint easily clears this low bar. *See id.*, at 908 ("[T]he required probability that [the plaintiff] will prevail need not be high."). As shown in Part A above, there is a growing consensus on the Federal bench weighing against all D&B's arguments for dismissal.

### C. D&B's Commercial Advertisements Are Not Protected by the First Amendment.

D&B argues Plaintiff's claims must be dismissed because "Plaintiff's theory of liability" is "that D&B cannot publish information of interest to the public," which "would violate D&B's First Amendment rights." Dkt. No. 18, at *17. This argument fails because it mischaracterizes Plaintiff's "theory of liability." Plaintiff does not seek to prevent publication of D&B's database. Plaintiff seeks to prevent D&B from using her personal information to advertise subscriptions. D&B's use of Plaintiff's persona in a free trial and display of the promotional "Download" button are easily separable from the database, and they are plainly commercial speech. Therefore, Plaintiff's claims are subject to intermediate scrutiny, which they easily meet. Accordingly, D&B's motion to dismiss as a matter of law on First Amendment grounds should be denied.

### 1. D&B's Advertisements Incorporating Plaintiff's Persona are Commercial Speech.

The Supreme Court has ruled that speech containing informational elements "should be characterized as commercial speech" when "the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983). The Complaint describes two advertising techniques, both of which satisfy the *Bolger* factors for "commercial speech." First, users may search for and view Plaintiff's profile as part of a free trial that lasts for a limited time. Compl., ¶¶8, 10, 40. When the free trial expires, D&B informs the user they must purchase a subscription costing more than $10,000 per year. *Id.*, ¶¶40-42. Second, as part of Plaintiff's profile, D&B displays a button that prompts users to "Download" Plaintiff's name and personal information. *Id.*, ¶¶38-39. Users who

click "Download" are told they must purchase a subscription to download Plaintiff's profile. *Id.*, ¶39. D&B's use of Plaintiff's profile as part of a promotional free trial and its display of the "Download" button on Plaintiff's profile are "advertisement[s]" "refer[ring] to a particular product" for which D&B "has an economic motivation." *See Bolger*, 463 U.S. at 66. These allegations illustrate D&B's "economic motivation," which is to trade off Plaintiff's personas for commercial gain.

Many courts have confirmed that similar advertising techniques constitute "commercial speech," "advertising," and use "for a commercial purpose." For example, in *Sessa*, by alleging the website "use[d] plaintiffs' names and images within the trial access," plaintiffs alleged use for "commercial sponsorship." 561 F. Supp. 3d at 1029-30. As the court explained:

> The advertising pattern indicates that [the website] is trading off the value of customers searching for Plaintiffs' names in order to entice them into purchasing a subscription. Similarly, free-trial subscribers are expected to convert to paid users if their searches generate sufficient value to the trial subscriber to motivate them to pay for a subscription.

*Id.* Likewise, in *Siegel v. ZoomInfo Techs., LLC,* the court found that the defendant ZoomInfo's[5] "use[ of] the plaintiff's identity in free previews [] to advertise . . . its monthly subscription services" was "a textbook example . . . of using a person's identity for commercial purpose." 2021 WL 4306148, at *3 (N.D. Ill. Sep. 22, 2021) (quoting *Lukis v. Whitepages, Inc.,* 454 F. Supp. 3d 746, 751 (N.D. Ill. 2020)).

Similarly, in *Kellman*, *Callahan v. PeopleConnect*, *Knapke*, and *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778 (N.D. Ill. 2021), websites engaged in commercial speech when they displayed profiles of the plaintiffs' personal information accompanied by buttons prompting the user to perform actions that required a subscription. In *Krause*, the defendant website displayed a "preview webpage" containing "summary information about plaintiff" and a "button labeled, 'View Plans Now,'" which linked to a page soliciting payment. 561 F. Supp. 3d at 784. Applying

---

[5]     ZoomInfo is a direct competitor of D&B that, like D&B, uses free trial access to advertise a database of professional contact information to business-to-business marketers.

*Bolger*, the court held that this was an advertisement "satisfy[ing] the constitutional test for commercial speech." *Id.*, at 783*; see also Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *14-15 (applying *Bolger* factors to similar advertisement); *Callahan v. PeopleConnect*, 2021 WL 5050079 at *1; *Knapke*, 553 F. Supp. 3d at 876-77. Like the buttons at issue in those cases, D&B's button prompting the user to "Download" is advertising promoting its subscription product, and is therefore commercial speech.

D&B argues against a straw man when it argues that "directories qualify for full protection." *See* Dkt. No. 18, at *17 (quotation omitted). Many courts have rejected similar attempts to recast right of publicity claims that arise from the *advertisement of a directory* as if they were claims arising from *publication of the directory*. For example, the *Krause* court wrote:

> [D]efendant begins by insisting that its database is merely a directory . . . entitled to full First Amendment protection. As noted above, however, plaintiff's [right of publicity] claim does not challenge her inclusion in defendant's directory, but rather asserts that defendant's use of her identity without her consent to entice customers to purchase its subscription service is prohibited by the statute.

561 F. Supp. 3d at 783. Likewise, the court in *Lukis* found the defendant website "misse[d] the point" of the claims, which were "directed at the free previews" incorporating plaintiff's persona, "not the [underlying database of] background reports" about individuals. *Lukis*, 454 F. Supp. 3d at 762; *see also Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *15. In short, D&B's advertisements, not the underlying directory, are the speech at issue, and they are clearly commercial.

D&B relies on *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012), but *Dex* serves only to highlight the distinction D&B seeks to elide. In *Dex*, the Seattle city government sought to forbid the publication of the directory itself (a phonebook). *Id.*, at 959. The presence of advertisements for local businesses did not render the phonebooks "commercial speech" because there was "no clear link" between the phone listings in the directory and the businesses being advertised. *Id.* Here, Plaintiff does not seek to prevent publication of D&B's directory; she seeks to prevent D&B from using her identity to advertise subscriptions.

Furthermore, there is a "clear link" between each profile and the subscription D&B is selling. D&B's profiles expressly tie the purchase of a subscription to the downloading of Plaintiff's information. Compl., ¶39; *see also Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *14 (distinguishing *Dex* on similar grounds).

D&B also cites *Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272-73 (E.D. Va. 1976) and *Bergen v. Martindale-Hubbell, Inc.*, 285 S.E.2d 6, 6-7 (Ga. 1981), but both cases pre-date *Bolger* and therefore do not reflect the controlling Supreme Court standard for what constitutes "commercial" speech. Furthermore, neither case involved advertisements.

### 2. D&B's advertisements do not lose their commercial character merely because they advertise a service that includes informational elements.

D&B argues that, because its service includes access to a "database that captures hundreds of thousands of [] individuals' employment information," its advertisements must enjoy the same "full" First Amendment protection as the database. *See* Dkt. No. 18, at *22-23. Even were D&B's directory "expressive" or "transformative" speech (as shown in Part C(4), it is not), this argument fails. First, D&B misrepresents its service, which includes more than access to a database. A subscription also provides "real-time alerts" and "personalized buyer intent models" that notify the subscriber when a specific Class member changes jobs or searches the Internet for a given product or service. Compl, ¶42. D&B does not argue, nor could it, that these services for tracking Class members' activities are "speech" entitled to First Amendment protection. Because the tracking services are not protected, the advertisements cannot be protected either.

Second, the Ninth Circuit has expressly rejected D&B's position here, *i.e.*, that advertisements "for speech products" necessarily inherit whatever First Amendment protection exists for the products being advertised. *See* Dkt. No. 18, at *29; *compare Charles v. City of Los Angeles, Mun. Corp.*, 697 F.3d 1146, 1152 (9th Cir. 2012) ("That the underlying E! News program is itself entitled to full First Amendment protection does not cloak all advertisements for the program with noncommercial status."). *Ariix, LLC v. NutriSearch Corp.*, on which D&B relies, states the relevant standard: an otherwise commercial advertisement "can lose its commercial

character" only when it is "inextricably intertwined with fully protected speech." 985 F.3d 1107, 1119 (9th Cir. 2021) (quotations omitted). If "no law of man or of nature makes it impossible to present the noncommercial aspects of the speech without the commercial aspects," then the advertisement does not inherit the First Amendment protection of the product being advertised. *Id.* Applying this standard, the *Ariix* court found that a promotional "ratings section" in a book about nutritional supplements did not enjoy full First Amendment protection because the ratings section was "easily separable" from the adjacent informational sections "describ[ing] the benefits and science of nutritional supplements." *Id.; see also Charles,* 697 F.3d at 1152.

Here, the commercial advertisements giving rise to Plaintiff's claims – D&B's inclusion of her profile in a free trial, and the button prompting users to purchase a subscription in order to "Download" her profile – are "easily separable" from the informational directory. *See Ariix*, 985 F.3d at 1119. D&B could comply with the law by removing Plaintiff's profile from its free trial and removing the promotional "Download" button from her profile. Accordingly, under *Ariix* and *Charles*, the advertisements giving rise to Plaintiff's claims are commercial speech.

Third, those courts that have extended "full" First Amendment protection to speech promoting a product have done so only in a context where the underlying product included religious or other expressive elements worthy of the highest level of protection. In *Charles*, the Ninth Circuit noted that the Supreme Court has drawn a "sharp contrast between the actions of ordinary, commercial booksellers" and those "who distribute literature as part of a religious mandate." 697 F.3d at 1153. While advertisements for books that are distributed as part of a religious mandate may be entitled to full First Amendment protection, "ordinary advertisements for books" are not. *Id.* Similarly, the underlying works in *Cf. De Havilland v. FX Networks*, LLC, 21 Cal. App. 5th 845, 863 (Cal. Ct. App. 2018), *Cher v. Forum International, Ltd.*, 692 F.2d 634 (9th Cir. 1982), and *Daly v. Viacom*, 238 F. Supp. 2d 1118 (N.D. Cal. 2002) were, respectively: a "docudrama about film starts Bette Davis and Joan Crawford"; an interview with a famous singer; and a reality television show in which musical bands competed for a prize. Taken together,

these authorities suggest that courts will extend "full" First Amendment protection to an advertisement only when the work being advertised contains religious or other expressive elements. Here, the product D&B is advertising contains no expressive elements. It comprises (1) a directory of profiles containing individuals' personal information; and (2) a service for tracking individuals' job changes and browser searches in real-time. Neither element is "expression" on any topic.

### 3. D&B's misleading advertisements are not entitled to protection, and even if they were, plaintiff's claims would easily survive intermediate scrutiny.

"For commercial speech to receive [First Amendment] protection, it at least must . . . not be misleading." *Bolger*, 463 U.S. at 68 (quoting *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980)). Here, D&B's advertisements are not entitled to protection because they misleadingly suggest Plaintiff and the members of the Class consented to D&B selling their names and contact information. *See* Compl., ¶¶21, 48; *see also Knapke*, 553 F. Supp. 3d at 880 ("It is questionable that the commercial speech at issue here is entitled to any protection, given that it misappropriates [plaintiff's] persona and potentially misleads the public").

Even were the advertisements entitled to some degree of First Amendment protection, Plaintiff's claims easily survive intermediate scrutiny, which asks whether the law "directly advances" a "substantial . . . government interest" in a means that is "not more extensive than necessary." *Bolger*, 463 U.S. at 68-69. As applied here, California's right of publicity statute and misappropriation of name or likeness tort "directly and appropriately advance[] [California's] substantial interest in enabling its citizens to protect the non-consensual commercial exploitation of their likenesses without overbroadly prohibiting commercial speech." *Knapke*, 553 F. Supp. 3d at 880; *see also Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *15 (applying intermediate scrutiny to similar California claims).

### 4. D&B's Informational Database and Real-Time Tracking Services are Not "Transformative" of Plaintiff's Persona.

1  D&B argues its directory of personal information and "real-time alert" service for tracking

2  individuals' job changes and internet searches are "transformative, expressive work[s]." Dkt.

3  No. 18, at *21. They are not. The "transformative use" doctrine applies only to "creative" works

4  in which "an artist's skill and talent" "transform[s]" an image into "something other than the

5  likeness." *Keller v. Electronic Arts Inc*., 724 F.3d 1268, 1274 (9th Cir. 2013) (*quoting Comedy

6  III Prods., Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 404 (2001)). A cartoon that is "distorted

7  for purposes of lampoon, parody, or caricature" is a transformative use, while a "conventional

8  portrait" is not. *Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th Cir. 2009).

9  Here, neither the profiles nor the tracking services reflect "creative" or "transformative"

10  work by an "artist" at D&B. D&B's profiles display Class members' names, occupations,

11  locations, contact information, and colleagues identities without modification or commentary. *See*

12  Compl., ¶36. While Plaintiff has not yet seen "real-time alerts" and expects to learn their content

13  and functioning through discovery, D&B's marketing indicates this tracking service is similarly

14  factual and devoid of creative elements. *See id*., ¶42. Therefore "transformative use" does not

15  apply. *See Davis v. Elec. Arts Inc*., 775 F.3d 1172, 1178 (9th Cir. 2015).

16  The cases D&B cites serve only to illustrate how far removed its product is from any use

17  that could be considered "transformative." D&B has not produced a docudrama re-interpreting

18  major events in the life of a famous actress. *Cf. De Havilland v. FX Networks, LLC*, 21 Cal. App.

19  5th 845 (2018). *Comedy III* found that a "literal, conventional depiction of The Three Stooges"

20  showed "no significant transformative or creative contribution" and allowed the plaintiff's right

21  of publicity claim to proceed. 25 Cal. 4th 387, 409. [6] This court should reach the same result with

22  respect to D&B's "literal, conventional" profiles and real-time alerts about Class members.

23

24

25  [6]    D&B also cites *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410 (2001)

26  and *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536 (Cal. Ct. App. 1993), but neither case
addresses transformative use.

27

In an underdeveloped, two-sentence argument, D&B admits that Plaintiff's "demographic facts" are valuable to D&B's marketing efforts, but insists Plaintiff cannot pursue her claim because that value does not derive "from Plaintiff's own reputation, prestige[,] or fame." Dkt. No. 18, at *21-22. On the contrary, it is well established that non-celebrity plaintiffs may pursue right of publicity claims. Indeed, the California statute was specifically intended to provide a cause of action for "noncelebrity plaintiffs whose names lacked commercial value on the open market." *Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 546 (Cal. Ct. App. 2012) (quotation omitted); *see also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806-07 (N.D. Cal. 2011).

### 5. Even Were D&B's Affirmative Defense Under the First Amendment Viable as a Matter of Law, It Would Raise Issues of Fact.

Immunity under the First Amendment is an affirmative defense. *Hilton*, 599 F.3d at 909. Accordingly, the burden of proof rests with D&B. *See Tovar v. U.S. Postal Service*, 3 F.3d 1271, 1284 (9th Cir. 1993). As demonstrated herein, this Court should reject D&B's argument as a matter of law. But even had D&B described a viable defense, the Court cannot dismiss at this stage, because D&B's purported defense relies on facts that are not in the Complaint and which Plaintiff disputes. For example, D&B claims that its database is "transformative" because it "publishes . . . information dynamically . . . in innumerable different ways." Dkt. No. 18, at *22. Plaintiff disputes that D&B's profiles are "transformative" or "expressive," and nothing in the Complaint suggests D&B presents profiles in "innumerable different ways." Because proving a First Amendment defense inherently requires introducing facts, courts rarely grant Rule 12(b)(6) motions to dismiss on First Amendment grounds. *See, e.g.*, *Hilton*, 599 F.3d at 910; *Siegel*, 2021 WL 4306148, at *4.

### D. Plaintiff Has Properly Plead Her Claims Under California Law.

D&B argues that Plaintiff's California statutory right of publicity, common law misappropriation, and UCL claims all fail for the same reason: that D&B's commercial use of Plaintiff's persona "falls within the public interest/public affairs" exception. Dkt. No. 18, at *23-

27. For the same reasons Plaintiff discussed with respect to the "public interest" prong of California's anti-SLAPP statute, *see* Part B *above*, this argument fails.

The public interest or public affairs exception "rests on the right of the public to know and the freedom of the press to tell it." *Montana v. San Jose Mercury News, Inc*., 34 Cal. App. 4th 790, 793 (1995). The exception covers "almost all reporting of recent events" about people who "create a legitimate and widespread attention to their activities." *Fraley*, 830 F. Supp. 2d at 804 (internal citations omitted). Although not strictly confined to news articles and reporting, the content must "significantly contribute to a matter of public interest." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).

Here, D&B's profile about Plaintiff does not fall under the exceptions because it does not "significantly contribute" to a "matter of public interest." *Id*. Plaintiff's name, contact information, job changes, and Internet browsing history are not "in connection with any news, public affairs, or sports broadcast or account, or any political campaign," Cal. Civ. Code § 3344(d), nor do they concern "recent events." *See Fraley,* 830 F. Supp. 2d at 804. Plaintiff is not someone who creates "a legitimate and widespread attention to their activities," nor does D&B argue otherwise. *See id*.

Attempting to articulate a "public interest" in Plaintiff's profile, D&B manages only to describe "interests" that are clearly both <u>private</u> and <u>commercial</u> in nature. According to D&B, Plaintiff's profile is "useful business information" that is of "economic importance" because it "affects marketing, solicitations, and business-to-business purchases," thereby "facilitating trade and commerce." Dkt. No. 18, *16. Plaintiff agrees wholeheartedly with D&B's description: D&B uses Plaintiff's profile to advertise website subscriptions to salespeople at private companies. Compl., ¶¶6, 18. It is difficult to imagine a use more directed to private interests. As D&B admits, the people who see Plaintiff's profile are privately employed salespeople who want to contact Plaintiff for the private purpose of marketing products and services directly to him.

Even were Plaintiff's name and contact information matters of "public interest," the exceptions still would not apply because, again, Plaintiff's claims are directed at the use of her

persona to advertise subscriptions, not D&B's distribution of her profile to subscribers. Even information that is clearly newsworthy is unprotected when used to advertise a product. *Abdul– Jabbar v. GMC*, 85 F.3d 407, 416 (9th Cir.1996) (newsworthy information was "not protected by § 3344(d)" when used "in the context of an . . . advertisement"); *Fraley*, 830 F. Supp. 2d at 804-5 ("Even newsworthy acts may nonetheless still result in liability under § 3344. . . [Defendant's] commercial use of those actions in [advertisements] removes them from the scope of § 3344(d)").

As explained throughout this brief, there is a difference between *providing information* and *using information to advertise a service*. Recognizing the distinction, many courts have rejected D&B's "public interest/public affairs" argument. *See, e.g., Lukis*, 454 F. Supp. 2d at 752 (rejecting "public affairs" argument in part because "Defendant[] . . . forgets that Plaintiff's claims are directed towards the free previews, not toward the subscription services advertised by the previews"); *Martinez*, 2022 WL 1078630, at *7 ("while ZoomInfo may operate a database that might concern matters of general interest, its specific use of Martinez's persona at issue in this case is purely commercial in nature"); *PeopleConnect*, 2021 WL 5050079, at *17-18. Again, D&B fails to cite these cases. There is no reason for a different result here.[7]

### E. Plaintiff Has Alleged Injury and Article III Standing.

Plaintiff has standing for both her statutory right of publicity and common law misappropriation claims because she alleges harms that traditionally gave rise to a common law claim for misappropriation of name and likeness. Under *TransUnion*, courts evaluating whether a statutory violation gives rise to Article III standing must "ask[] whether plaintiffs have identified a . . . common-law analogue for their asserted injury." 141 S. Ct. at 2204. If a common-law analogue exists, and the harm alleged "has a close relationship to a harm that has traditionally

---

[7]    In a footnote, D&B argues that because some of the information in Plaintiff's profile is "presumably" publicly available through other sources, D&B's profile must exempt from liability under § 3344. This does not make sense. As explained in Part (E)(3), the right of publicity protects <u>how information is used</u>, not whether it is disseminated. Plaintiffs do not seek to keep their information private; they seek to prevent it being used to advertise a service they do not endorse.

been regarded as providing a basis for a lawsuit" at common law, then Article III standing exists. *Id.* at 2209 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)).

Here, Plaintiff alleges claims under California's right of publicity statute, Cal. Civ. Code § 3344, and the analogous California tort of misappropriation of name and likeness. California's right of publicity statute is a modernization of and complement to the California tort of misappropriation of name or likeness. *Downing*, 265 F.3d at 1001; *Newcombe v. Adolf Coors Company*, 157 F.3d 686, 692 (9th Cir. 1998). Because Plaintiff alleges harms that traditionally gave rise to a common law claim, Plaintiff has Article III standing to pursue both her statutory and common law claims. *See Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *5 (plaintiffs had standing to assert both claims because they alleged "harm[s] recognized at common law"); *Sessa*, 561 F. Supp. 3d at 1020 ("Plaintiffs have alleged concrete injury . . . because they seek relief for claims analogous to those available at common law").

### 1. Plaintiff alleges economic injury from D&B's exploitation of, and profiting from, her persona.

First, Plaintiff alleges injury in the form of D&B's unjust profits from its unauthorized use of her persona, which "denied Plaintiff[] the economic value of [her] likeness[]." *See PeopleConnect*, 2021 WL 5050079, at *15 (California claims). Because "[e]conomic value may reasonably be inferred from use . . . to advertise," the use of personal information to advertise a subscription satisfies § 3344's requirement that the plaintiff be a "person or persons injured." *Id.*, at *14-15. The *Martinez* court agreed, finding that the "commercial value" of the persona was "evident in ZoomInfo's reliance on this kind of information to generate profit." *Martinez*, 2022 WL 1078630, at *4 (California law). The plaintiff had standing because "she has been denied the economic value from defendant's non-consensual misappropriation." *Id; see also In re Clearview AI, Inc. Consumer Privacy Litig.*, No. 21-cv-0135, --- F. Supp. 3d ---, 2022 WL 444135, at *10 (N.D. Ill. Feb. 14, 2022) (allegations that class "was injured because the [] defendants dd not compensate them for the use of their likenesses" were sufficient to state a "right to publicity claim under California law.").

These decisions find support in the history of California's tort of misappropriation of name or likeness. Traditionally, alleging the defendant used and profited from a name or likeness gave rise to a misappropriation claim. *See, e.g.*, *Eastwood*, 149 Cal. App. 3d at 416 (recognizing common law claim for "appropriation, for the defendant's advantage, of the plaintiff's name or likeness."). A person need not be a celebrity to suffer economic harm. Applying California law, the Ninth Circuit noted that "the appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously economically valueless." *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 825–27 n.11 (9th Cir. 1974).

D&B relies on *In re Google, Inc. Privacy Policy Litig.* for the general proposition that "a plaintiff must do more than point to the dollars in a defendant's pocket." Dkt. No. 18, at *28 (citing 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("*Google*")). However, the reasoning in *Google* has been superseded by subsequent controlling authority. In *Davis v. Facebook, Inc.*, the Ninth Circuit held that the plaintiffs had Article III standing because they alleged "Facebook [was] unjustly enriched through the use of their data." 956 F.3d 589, 599 (9th Cir. 2020). The Ninth Circuit reasoned that because "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss," the plaintiffs had "adequately pleaded an entitlement to Facebook's profits" from its use of their data. *Id*. at 600. In line with the *Davis* decision, in *Calhoun v. Google, LLC*, Judge Koh confirmed that the "Ninth Circuit . . . [has] concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing." 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (citing *In re Facebook Privacy Litig.*, 72 F. App'x 494, 494 (9th Cir. 2014)).

D&B relies heavily on *Callahan v. Ancestry*, 2021 WL 2433893 (N.D. Cal. June 15, 2021), because it is the only decision that supports D&B's position. However, five courts have explicitly rejected the reasoning in *Callahan v. Ancestry*, including two courts in this District, because the decision failed to evaluate whether the harms alleged were recognized at common law as required

by *TransUnion* and *Spokeo*. *See Callahan v. PeopleConnect*, 2021 WL 5050079, at *15 (N.D. Cal.); *Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *5 (N.D. Cal.); *Sessa*, 561 F. Supp. 3d at 1021-22; *Bonilla*, 2021 WL 5795306, at *3-4; *Martinez*, 2022 WL 1078630, at *5. D&B asks this Court to follow *Callahan v. Ancestry* in holding that to establish injury a Plaintiff must plead the advertisement "suggested that plaintiffs were endorsing [the] product." *See* Dkt. No. 18, at *29. On the contrary, allegations of endorsement are not required. *See, e.g.*, *Eastwood*, 149 Cal. App. 3d at 418-19 ("California law has not imposed any requirement that the unauthorized use or publication of a person's name or picture be suggestive of an indorsement or association with the injured person"); *Callahan v. PeopleConnect*, 2021 WL 5050079, at *16; *Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *10.

### 2. Plaintiff alleges injury from infringement of her intellectual property.

Second, Plaintiff alleges injury from D&B's infringement of her intellectual property. Traditionally, the California tort recognized an intellectual property right in an individual's name and likeness. The misappropriation of this property was itself injury, just as the unauthorized use of copyrighted or trademarked material is injury. *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) ("[C]ommon law rights are also property rights. Appropriation of such common law rights is a tort in California."); *see also Comedy III,* 25 Cal.4th at 399 ("The right of publicity . . . protects a form of intellectual property"); *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) ("The right of publicity is an intellectual property right"); *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1109 (C.D. Cal. 2004) (same).

Because violation of this intellectual property right was harm giving rise to a common law misappropriation claim, district courts applying the analysis required by *TransUnion* and *Spokeo* have ruled that individuals whose personal information is used to advertise website subscriptions have Article III standing. *See Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *5 ("[plaintiffs] allege [defendant] unjustly profited from their intellectual property—a harm recognized at common law") (citation omitted); *PeopleConnect*, 2021 WL 5050079, at *19 (individuals'

"names and likenesses are intellectual property," and a website's use without compensation satisfies the requirement for alleging "lost money or property" under Cal. Bus. & Prof. Code § 17200); *Sessa*, 561 F. Supp. 3d at 1023 ("the right of publicity refers to a property right in a person's identity") (quotation omitted); *see also Knapke*, 2021 WL 3510350, at *8.

### 3. Plaintiff alleges concrete injury from the denial of her statutory right to control the commercial use of her name and persona.

Third, Plaintiff alleges injury from D&B's denial of her right to control the commercial use of her name and persona. Traditionally, the right of publicity protects "the inherent right of every human being to control the commercial use of his or her identity." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 n.6 (9th Cir. 2006) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 18:43 (4th ed. 2005)). This principle is embodied in both Cal. Civ. Code § 3344 and California's common-law misappropriation tort. *Id*. In *Fraley*, the court found the plaintiffs had Article III standing to pursue a § 3344 claim because § 3344 arose from California common law protecting "the right to prevent others from appropriating elements of one's identity for commercial gain." 830 F. Supp. at 806. Therefore, "alleg[ing] a violation of their individual statutory rights" was sufficient to allege "an invasion of a legally protected interest for Article III purposes." *Id*., at 797. Similarly, *Kellman* found the plaintiffs had standing to bring § 3344 claims because they alleged the defendant "infringed their right to control commercial use of their names and identities—a harm recognized at common law." --- F. Supp. 3d ---, 2022 WL 1157500, at *5. Courts evaluating Illinois statutory right of publicity, which is similar to California's, have reached the same conclusion. *See, e.g.*, *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 746, 805 (N.D. Ill. 2020) (denying motion to dismiss for lack of standing because the statute "codified [the] common law tort," which protected a substantive "right to control and to choose whether and how to use an individual's identity for commercial purposes," under *Spokeo*

a violation of statute itself "inflicts a concrete injury-in-fact under Article III."); *see also Bonilla*, 2021 WL 5795306, at *4 (accord).

D&B argues Plaintiff cannot have suffered injury from D&B's violation of the California right of publicity statute because Plaintiff did not allege "publication of private facts." Dkt. No. 18, at *27. This conflates the right of publicity with a different cause of action. The right of publicity and related appropriation tort protect an individual's right to control how personal information is used, not to entirely prevent its dissemination. *See Patel v. Facebook, Inc*., 932 F.3d 1264, 1272 & n.6 (9th Cir. 2019) (quotation omitted). Neither claim requires pleading that information was secret or nonpublic prior to the defendant's misuse. *See Eastwood*, 149 Cal. App. 3d at 417 (elements of misappropriation tort). As the Supreme Court recognized in *Zacchini v. Scripps-Howard Broadcasting Co*., "in right of publicity cases the only question is who gets to do the publishing." 433 U.S. 562, 573 (1977); *see also Sessa*, 561 F. Supp. 3d at 1022 n.3 ("right of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes."); *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 869 (Ind. Ct. App. 2013) (right of publicity is "invaded" not "because [a] name or [] appearance is brought before the public" but rather because they are "appropriat[ed] to the defendant's benefit") (quotation omitted).

The right of publicity gives individuals comfort they may safely and selectively place their names and likenesses in the public eye by, for example, sharing personal information on professional networking sites like LinkedIn, without fear someone will steal and exploit their names and identities for commercial gain. *See, e.g*., *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1031-33 (S.D. Ohio 2016) (non-celebrity plaintiffs had a "property right" in refusing commercial use of their engagement photograph on a book cover because they "did not place the photograph on the internet for expropriation" by the defendant); *Timed Out, LLC v. Youabian, Inc*., 229 Cal. App. 4th 1001, 1006 (Cal. Ct. App. 2014). Accordingly, almost all right of publicity cases involve material the plaintiff intentionally distributed, which the defendant then copied from a public

source. *See, e.g.*, *Fraley*, 930 F. Supp. at 799 (Facebook misused information and photographs its users uploaded to the site); *Downing*, 265 F.3d 994 (defendant copied plaintiff's image from a published book). Were only "secret" names and personas protected, the law would protect no one.

### 4. Plaintiff alleged mental injury.

Fourth, Plaintiff alleges D&B's illegal conduct caused her mental injury and disturbed her peace of mind. At common law, mental injury "suffered from an appropriation of the attributes of one's identity" was injury giving rise to a cause of action. *See Motschenbacher*, 498 F.2d at 824-25. Knowledge of possible economic loss resulting from a defendant's misappropriation, and knowledge of potential harm to reputation resulting from the promotion of a product the Plaintiff does not approve of, are sources of mental anguish giving rise to a claim. *See Miller v. Collectors Univ.*, 159 Cal. App. 4th 988, 1006 n.12 (Cal. Ct. App. 2008). Plaintiff alleges injuries arising from both, *see* Compl., ¶¶48-50, and therefore adequately alleges injury giving rise to Article III standing. Judge Pechman recently ruled that a plaintiff sufficiently plead mental injury based on very similar allegations. *Martinez*, 2022 WL 1078630, at *5; *see also Kellman*, --- F. Supp. 3d ---, 2022 WL 1157500, at *5.

## IV. CONCLUSION

For the reasons above, Plaintiffs respectfully requests the Court DENY Dun & Bradstreet's motion in its entirety.

Dated: July 28, 2022         By: */s/ Brittany Resch*

<div style="margin-left:3em">

Brittany Resch (*Pro Hac Vice*)
brittanyr@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

Benjamin R. Osborn (*Pro Hac Vice* forthcoming)
ben@benosbornlaw.com
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen Street
Brooklyn, NY 11201

</div>

Telephone: (347) 645-0464

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

*Attorneys for Plaintiffs and the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Brittany Resch, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 28th day of July, 2022.

TURKE & STRAUSS LLP

By:  */s/ Brittany Resch*
Brittany Resch (*Pro Hac Vice*)
brittanyr@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423