Ashley I. Kissinger (SBN 193693)
KissingerA@ballardspahr.com
**BALLARD SPAHR LLP**
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.376.2407
Facsimile: 303.296.3956

Elizabeth L. Schilken (SBN 241231)
SchilkenE@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

Michael R. O'Donnell
(admitted *pro hac vice*)
MODonnell@RIKER.com
Michael P. O'Mullan
(motion for admission *pro hac vice* forthcoming)
MOMullan@RIKER.com

**RIKER DANZIG LLP**
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Telephone: 973.538.0800
Facsimile: 973.538.1984

*Attorneys for Defendant*
*Dun & Bradstreet Holdings, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| Odette R. Batis, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Dun & Bradstreet Holdings, Inc.,<br><br>　　　　　　　　　Defendant. | Case No. 3:22-cv-01924-MMC<br><br>**DUN & BRADSTREET HOLDINGS, INC.'S SUPPLEMENTAL BRIEF ADDRESSING *SEROVA V. SONY MUSIC ENTERTAINMENT* (2022) 13 CAL. 5TH 859**<br><br>Hon. Maxine M. Chesney<br><br>Complaint Filed: March 30, 2022<br><br>Date:  October 21, 2022<br>Time: 9:00 a.m.<br>Location: San Francisco Courthouse<br>　　　　　Courtroom 7 – 19th Floor<br>　　　　　450 Golden Gate Avenue<br>　　　　　San Francisco, CA 94102 |

Pursuant to the Court's Order dated September 15, 2022, Defendant Dun & Bradstreet Holdings, Inc. ("D&B") hereby submits this Supplemental Brief in support of its anti-SLAPP motion to strike or dismiss the Complaint.  As set forth below, the California Supreme Court's analysis of First Amendment principles in *Serova v. Sony Music Entertainment*, 13 Cal. 5th 859 (2022) compels the conclusion that D&B's anti-SLAPP motion to strike or dismiss Plaintiff Odette Batis's complaint should be granted.

## I. The facts and procedural history of *Serova*

In *Serova*, as here, a central inquiry before the Court was whether speech relating to an expressive work, which the plaintiff characterized as "advertising" and thus "commercial speech," was in fact noncommercial speech fully protected by the First Amendment.  *Serova* arose from the plaintiff's claim that she was misled into purchasing an album titled *Michael* that producers falsely claimed to be the posthumous release of previously unreleased vocal tracks by Michael Jackson. The plaintiff claimed that she purchased the album in reliance on the album producers' false assertions that Jackson had sung the tracks.  Those allegedly false statements were made on the album's packaging and in a promotional video, and Serova alleged false advertising under the Consumers Legal Remedies Act (CLRA) and the unfair competition law (UCL).

The defendant producers (collectively, "Sony") brought a special motion to strike under the anti-SLAPP statute, claiming in part that the album packaging and promotional video were noncommercial speech protected by the First Amendment, and were therefore beyond the reach of consumer protection laws.  *Serova*, 13 Cal. 5th at 869-70.  The superior court rejected this argument and denied this aspect of Sony's anti-SLAPP motion, holding that the album packaging and promotional video were commercial speech subject to the false advertising claims asserted by the plaintiff.  *Id.* at 870.  The Court of Appeal reversed, concluding the packaging and video were "more than mere commercial speech for purposes of the First Amendment and therefore immune from the statutes Serova had invoked." *Id.* at 871.  The Supreme Court then reversed the Court of Appeal's decision, holding that the album packaging and promotional video were commercial speech and not protected from the plaintiff's claims by the First Amendment.  *Id.* at 871-81, 892.

D&B submits this supplemental brief because the Supreme Court's discussion in *Serova* of the law on commercial speech, advertisements that are "adjunct to" expressive works, and commercial speech that is "inextricably intertwined" with noncommercial speech makes clear that, unlike the speech that was at issue in *Serova*, D&B's free trial of Hoovers *is* fully protected by the First Amendment.[1]  Application of those doctrines to the facts in *Serova* led to a finding that the plaintiff's false advertising claims could succeed because (1) the speech was allegedly *false*; and (2) it was *not excerpted from a work that is, itself, protected by the First Amendment*.  Here, the opposite is true.  The challenged speech is *not* alleged to be false, and it *is* a mere excerpt of a First Amendment-protected work.  These facts bring D&B's speech squarely within the protective ambit of the First Amendment and the *Serova* Court's holdings amply support that result.

## II. *Serova* confirms that truthful speech that is simply an excerpt of a First Amendment-protected work is also constitutionally protected, even if that speech is "promoting" the protected work

The *Serova* opinion makes clear, in several ways, that D&B's free trial of Hoovers is not actionable under California's right of publicity laws.  First, it is fully protected, noncommercial speech.  In *Serova*, the Court explained that "[s]peech's content is typically commercial if it makes 'representations of fact about the business operations, products, or services of the speaker (or the individual or company that the speaker represents) . . . for the purpose of promoting . . . the speaker's products or services."  13 Cal. 5th at 875 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 953 (2002)).  But this case involves *no* representations about the business, products, or services of the speaker.  Unlike the album packaging and promotional video in *Serova*, which consisted of statements *about* the product being sold (i.e., "an explicit promise of a superstar's vocal contributions to a product," *see Serova*, 13 Cal. 5th at 880), here the free trial is not a statement *about* the database – it is simply a *sample of the database itself*, that is, it is an *excerpt* of an expressive work.  As such, it is noncommercial speech.[2]

---

[1] Although *Serova* was a false advertising case and not a right of publicity case, as discussed below (and as the *Serova* Court expressly recognized), the First Amendment issues of course apply in both contexts.

[2] D&B has separately shown that even if the free trial were commercial speech, Batis's right of publicity claims, as applied, would not survive the requisite level of scrutiny that applies to commercial speech regulations, whether it be strict scrutiny or intermediate scrutiny.  *See* D&B's

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Moreover, regardless of whether the free trial is properly categorized as "commercial" or "noncommercial" speech, it is not actionable under the First Amendment. In Section III.B.4 of its opinion, the Court addressed Sony's argument, akin to D&B's argument in this case, that "if its representations about *Michael* seem commercial, they are nonetheless so connected with fully protected, noncommercial speech – *Michael*'s musical content – that they must be treated as, and receive the heightened protection due, noncommercial speech." *Serova*, 13 Cal. 5th at 880. In rejecting Sony's argument on the facts presented there, the Court addressed two related doctrines: (1) commercial speech that is "inextricably intertwined" with noncommercial speech is protected by the First Amendment to the same extent as the noncommercial speech; and (2) truthful advertising that is "adjunct to an expressive work" is protected by the First Amendment to the same extent as the expressive work. *Id.* at 880-83.

With respect to the first doctrine, the Court held that "Sony's identification of Jackson as lead vocalist is not inextricably intertwined with the music on *Michael* or any of the album's arguably expressive elements." *Id.* at 882. This holding is not surprising given the facts presented there. It was not "'impossible' to separate the commercial components" of the producers' speech "from the noncommercial" components because the speech at issue was not also *in the expressive work itself (i.e., in the songs)*, it was *only* on the packaging and *only* in the promotional video. *Id.* at 880-82 (citing, *inter alia*, *Board of Trustees, State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989)). In contrast, in this case, separating what Batis claims is the "commercial" component of D&B's speech (the free trial of the Hoovers database) from what she concedes is the noncommercial component (the Hoovers database) is, quite literally, impossible. The free trial is a sample—an excerpt—of the Hoovers database itself. Indeed, access to Batis's profile in a free trial *only* occurs when a trial subscriber searches the database itself with a query that would return Batis's name. The free trial of the database cannot be separated from the database.

In addressing the second doctrine, the Court recognized that the California Courts of Appeal have held that "the truthful use of a name and likeness to promote an expressive work"

---

Reply at 8:15-12:24.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

that, itself, contains that name and likeness, "cannot support a claim for violation of the right of publicity." *Id.* at 881 (citing *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 862 (2d Dist. 2018) (use of Olivia De Havilland's name in ad to promote a film in which she was depicted was protected by the First Amendment); *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (2d Dist. 1997) (holding that plaintiff's allegation that defendants "used photographs of 'his' character in particular to advertise and promote public viewing" of the movie *The Sandlot* did not support a commercial misappropriation claim because that use was "'merely an adjunct to the exhibition of the film'" (quoting *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 870, 872 (1979)); and *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 797 (6th Dist. 1995) ("a newspaper has a constitutional right to promote itself by reproducing its originally protected articles or photographs")); *see also* D&B's Mot. at 13:12-14:16 and D&B's Reply at 6:23-7:22 (citing additional cases that stand for this proposition).  The Court expressly observed that the one Court of Appeal decision that did not follow this rule, *Keimer v. Buena Vista Books, Inc.*, 75 Cal. App. 4th 1220 (1st Dist. 1999), "has been criticized as insufficiently protective of free speech." *Serova*, 13 Cal. 5th at 882 n.9.[3]  And the Court recognized that the reason why the Ninth Circuit did not apply the doctrine in *Charles v. City of Los Angeles*, 97 F.3d 1146 (9th Cir. 2012),

---

[3] The *Keimer* court mistakenly applied the three-pronged test announced in *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), which was developed for cases where it is a "close question" whether speech is commercial or not. *Keimer*, 75 Cal. App. 4th at 1228-30.  The court failed to recognize—as Batis fails to recognize—that in *Bolger* the Supreme Court cautioned that, "[o]f course, a different conclusion may be appropriate in a case where the [challenged speech] advertises *an activity itself protected by the First Amendment*." 463 U.S. at 67 n.14 (emphasis added) (citing, *inter alia*, *Murdock v. Pennsylvania*, 319 U.S. 105 (1943) (advertisement for religious book cannot be regulated as commercial speech)).  *See also* D&B's Reply at 10:1-11:25 (explaining that the *Bolger* analysis is inapplicable here because there the speech was advertising a physical product (contraceptives) rather than a First Amendment-protected work, and that, in any event, application of the *Bolger* test results in a finding of noncommercial speech in this context).  The *Keimer* court's decision also may have been animated by the court's concern that the speech at issue there, unlike here, was alleged to be *false*.  There is plainly a greater state interest in preventing false speech than there is compensating a person for the use of their identity in an ad, particularly where that person is entitled to no compensation for the exact same use of their identity in an expressive work that the advertisement is for.  *See Serova*, 13 Cal. 5th at 873 (discussing the "three common justifications for permitting greater regulation of commercial, as opposed to noncommercial, speech," including that "commercial speech may be *more easily verifiable by its disseminator*" and "prevention of commercial harm") (citations and quotation marks omitted) (emphasis in original).  Indeed, in the course of finding that the *Michael* album packaging and promotional video were commercial speech, the *Serova* Court extensively discussed the fact that they were alleged to be false.  *See id.* at 877-80.  Not so here.

involving a billboard advertisement for a news program, is because there, unlike here, the advertisement did not in any way reflect the content of the news program itself: "'[S]peech inviting the public to watch' a program 'is not inherently identical to the speech that constitutes the program itself.'"  13 Cal. 5th at 882 (quoting *Charles*, 97 F.3d at 1152).

The *Serova* court appropriately held this doctrine was inapplicable to the plaintiff's claims arising from the album packaging and promotional video, because the claims focused on the alleged *falsity* of the speech *about* the news program rather than—as Batis's claims do here—the use of *true* speech *excerpted* from a First Amendment work to promote that work:

> Sony's alleged false representations are distinct from, rather than adjunct to or reflective of, any artistic expression on *Michael*.  Serova is not suing because *Michael*'s artistic expression has spilled over into promotional advertising, but because she believes Sony falsely advertised the lead vocalist.

13 Cal. 5th at 882.  And because "Sony's advertising [did] not reproduce the music on *Michael*," the Court concluded it "need not address . . . the full contours" of the existing doctrine governing the promotion of expressive works.  *Id.* at 882 n.9.

In short, the *Serova* Court acknowledged the existence of these important doctrines and left them undisturbed.  Under them, D&B's motion should be granted.  Here, what Batis calls an "advertisement" is nothing more than free trial access to sample the expressive work itself, which includes Plaintiff's profile.  As the distinguished UCLA constitutional law professor and author Eugene Volokh explained in discussing the *Serova* decision, no right of publicity claim can succeed on these facts:

> To be sure, sometimes commercial advertising for noncommercial speech—"noncommercial speech" here meaning speech such as books, films, or music, which isn't "commercial speech" for First Amendment purposes even though it's sold in commerce—is indeed assimilated to noncommercial speech. For instance, the First Amendment protects, notwithstanding state "right of publicity" laws, an author's right to publish and sell an unauthorized biography, and that includes the right to use the subject's name in ads or covers for the biography. But the court [in *Serova*] distinguished that situation . . . .

Eugene Volokh, *False Advertising Claim Over Allegations That 'Michael' Included Tracks by Jackson Imitator Can Proceed*, REASON: THE VOLOKH CONSPIRACY  (Aug. 18, 2022), https://reason.com/volokh/2022/08/18/false-advertising-claim-over-allegations-that-michael-included-tracks-by-jackson-imitator-can-proceed/.

Respectfully submitted,

BALLARD SPAHR LLP

By: /s/ Ashley I. Kissinger
     Ashley I. Kissinger

RIKER DANZIG LLP

By: /s/ Michael R. O'Donnell
     Michael R. O'Donnell

*Attorneys for Defendant*
*Dun & Bradstreet Holdings, Inc.*

Date:  September 23, 2022

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

DMFIRM #404953982 v1

6

D&B'S SUPPLEMENTAL BRIEF ADDRESSING *SEROVA V. SONY MUSIC ENTERTAINMENT* – 22-CV-01924-MMC