1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    ODETTE R. BATIS,                          Case No. 22-cv-01924-MMC

8                    Plaintiff,

9          v.                                  **ORDER DENYING DEFENDANT'S
                                               MOTION TO STRIKE AND, IN THE
10   DUN & BRADSTREET HOLDINGS,               ALTERNATIVE, MOTION TO DISMISS**
     INC.,
11                                             Re: Dkt. No. 18
                    Defendant.
12

13          Before the Court is defendant Dun & Bradstreet Holdings' ("D&B") "Special

14   Motion," filed June 30, 2022, "to Strike Complaint Pursuant to Cal. Civ. Proc. Code

15   § 425.16 and, in the Alternative, Motion to Dismiss Pursuant to Fed. R. Civ. Proc.

16   12(b)(1) and 12(b)(6)."  Plaintiff Odette Batis ("Batis") has filed opposition, to which D&B

17   has replied.  Additionally, the parties have filed, with leave of court, supplemental briefs,

18   and, on five occasions, statements of recent decision, the last on January 31, 2023.  The

19   Court, having read and considered the papers filed in support of and in opposition to the

20   motion, rules as follows.[1]

21   **I.      BACKGROUND[2]**

22          D&B owns and operates the "D&B Hoovers" database, which "contains the names,

23   personal information, and personas of hundreds of millions of individuals, including tens

24   of millions of Californians."  (See Compl. ¶¶ 2, 5.)  D&B "sells the D&B Hoovers database

25   _____

26          [1] By order filed October 19, 2022, the Court took the matter under submission.

27          [2] The following facts are taken from the Complaint.  (See Class Action Compl.
     ("Compl."), Dkt. No. 1.)
28

1    to salespeople and marketers," who use it "to send personalized sales and marketing

2    communications to the individuals who appear in the D&B Hoovers database."  (See

3    Compl. ¶ 6.)

4        According to Batis, D&B "advertises and promotes the D&B Hoovers database by

5    publicly displaying profiles of the [p]laintiff" on the D&B Hoovers website.  (See Compl.

6    ¶ 7.)  Specifically, during a "free trial of the D&B Hoovers database" (see Compl. ¶ 37),

7    which "typically" lasts for twenty-four hours (see Compl. ¶ 40), a user can search the D&B

8    Hoovers website and see Batis's profile, comprised of her "name, job title, place of work,

9    and telephone number" (see Compl. ¶ 33), as well as the "identities of her work

10    colleagues and 'Triggers'"[3] (see Compl. ¶ 35.  Users who attempt to download Batis's

11    profile during the free trial or who attempt to view her profile after the free trial "are

12    informed they must purchase a subscription."  (See Compl. ¶¶ 39-40.)

13        A subscription costs "more than $10,000 per year" (see Compl. ¶ 41) and provides

14    users: "(1) the ability to search, access, and download contact information and personal

15    information of hundreds of millions of individuals; (2) access to 'comprehensive

16    intelligence on more than 170 million business records'; (3) 'real-time alerts, dynamically

17    updating lists, and personalized buyer intent models'" (see Compl. ¶ 42 (citing DUN &

18    BRADSTREET, https://www.dnb.com/ca-en/products/marketing-sales/dnb-hoovers.html)).

19        Batis concedes she "may have consented to the posting of [her] name[] on the

20    website of the company for which [she] work[s], or on a professional networking site" (see

21    Compl. ¶ 17), but alleges she "did not give consent to [D&B] to use her name, personal

22    information, or persona in any way" (see Compl. ¶ 32), and was "seriously distressed to

23    discover that [D&B] is using her name and personal information to advertise subscriptions

24    to the D&B Hoovers website without her consent" (see Compl. ¶ 3).

25        Based on the above allegations, Batis asserts, on her own behalf and on behalf of

26

27      ───────────────
       [3] According to Batis, "Triggers" are "events in [her] life that [D&B] believes

28    'represent selling opportunities.'"  (See Compl. ¶ 35.)

United States District Court
Northern District of California

1   a putative California class, the following causes of action: (1) "Violation of California Right

2   of Publicity Statute, Cal. Civ. Code § 3344," (2) "Tort of Appropriation of a Name or

3   Likeness," and (3) "California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et

4   seq." (See Compl. at 15:25, 17:2, 17:19.)

5        By the instant motion, D&B seeks, pursuant to § 425.16 of the California Code of

6   Civil Procedure, an order striking the Complaint in its entirety, or, in the alternative,

7   pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, an order

8   of dismissal.  Because a motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge

9   to the court's "subject-matter jurisdiction," see Fed. R. Civ. P. 12(b)(1), and "[w]ithout

10   jurisdiction the court cannot proceed at all in any cause," see Steel Co. v. Citizens for a

11   Better Env't, 523 U.S. 83, 94 (1998) (internal quotation and citation omitted), the Court

12   first considers Batis's Rule 12(b)(1) motion.

13   **II.**     **MOTION TO DISMISS – RULE 12(b)(1)**

14        **A.  Legal Standard**

15        "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause

16   lies outside this limited jurisdiction."  See Kokkonen v. Guardian Life Ins. of Am., 511 U.S.

17   375, 377 (1994).  "The party asserting federal subject matter jurisdiction bears the burden

18   of proving its existence."  See Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115,

19   1122 (9th Cir. 2010).

20        "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  Safe Air for

21   Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the

22   challenger asserts that the allegations contained in a complaint are insufficient on their

23   face to invoke federal jurisdiction," id., and a court assumes the plaintiff's "allegations to

24   be true and draw[s] all reasonable inferences in [his/her] favor," see Wolfe v. Strankman,

25   392 F.3d 358, 362 (9th Cir. 2004).  "By contrast, in a factual attack, [i.e., where] the

26   challenger disputes the truth of the allegations that, by themselves, would otherwise

27   invoke federal jurisdiction," a court "need not presume the truthfulness of the plaintiff's

28   allegations" and "may review evidence beyond the complaint without converting the

United States District Court
Northern District of California

1    motion to dismiss into a motion for summary judgment."  See Safe Air, 373 F.3d at 1039.

2         **B. Discussion**

3         D&B moves to dismiss pursuant to Rule 12(b)(1) on the asserted ground that Batis

4    "does not have standing to bring her claims."  (See D&B's Special Mot. to Strike Compl.

5    Pursuant to Cal. Civ. Proc. Code § 425.16 and, in the Alternative, Mot. to Dismiss

6    Pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) ("Def.'s Mot.") at 18:1, Dkt. No. 18.)

7         A district court has subject matter jurisdiction only where the plaintiff has

8    "[s]tanding to sue" under Article III of the Constitution.  See Spokeo, Inc. v. Robins, 578

9    U.S. 330, 338 (2016).  The "irreducible constitutional minimum" of Article III standing

10   consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that

11   is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

12   redressed by a favorable judicial decision."  See id. (internal quotation and citation

13   omitted).  Here, D&B, raises a facial challenge, contending Batis lacks Article III standing

14   for the asserted reason that she has not established a cognizable injury in fact.

15        "To establish injury in fact, a plaintiff must show that he or she suffered 'an

16   invasion of a legally protected interest' that is 'concrete and particularized.'"  See id. at

17   339 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).  In that regard, as the

18   Supreme Court has instructed, a court, in determining whether an injury is sufficiently

19   "concrete" to confer Article III standing, "should assess whether the alleged injury to the

20   plaintiff has a close relationship to a harm traditionally recognized as providing a basis for

21   a lawsuit in American courts," an inquiry that "asks whether plaintiffs have identified a

22   close historical or common-law analogue for their asserted injury."  See TransUnion LLC

23   v. Ramirez, 141 S. Ct. 2190, 2204 (2021) (internal quotations and citation omitted).

24        Here, Batis identifies four alleged injuries: (1) "misappropriation" of her "intellectual

25   property," specifically, her name and likeness, (2) "unlawful profiting" from D&B's

26   unauthorized use of her persona, (3) "invasion of [her] privacy rights," and (4) "harm to

27   peace of mind."  (See Compl. ¶ 23; see also Pl.'s Opp'n to Def.'s Mot. to Strike or

28   Dismiss ("Pl.'s Opp'n") at 18-23, Dkt. No. 23.)  As discussed below, such alleged injuries

United States District Court
Northern District of California

4

1    are the "sort of harms recognized as sufficiently concrete for judicial redress at common

2    law."  See Kellman v. Spokeo, Inc., 599 F. Supp. 3d 877, 889 (N.D. Cal. 2022).

3    Consequently, "[c]ourts in this district have overwhelmingly found that plaintiffs in similar

4    circumstances had sufficiently pleaded a cognizable injury" for purposes of establishing

5    Article III standing.  See Spindler v. Seamless Contacts, Inc., 2022 WL 16985678, at *4

6    (N.D. Cal. Oct. 24, 2022).

7        First, Batis alleges injury from D&B's "misappropriation" of her intellectual property

8    rights in her "name and likeness."  (See Pl.'s Opp'n, at 20:12-14; see also Compl. ¶¶ 23,

9    47.)  "[N]ames and likenesses are intellectual property," see Callahan v. PeopleConnect,

10   Inc., 2021 WL 5050079, at *19 (N.D. Cal. Nov. 1, 2021), and "[t]he use of an individual's

11   likeness for commercial purposes, even of a relatively unknown person, establishes

12   common law injury for right of publicity claims," see Sessa v. Ancestry.com Operations

13   Inc., 561 F. Supp. 3d 1008, 1022 (D. Nev. 2021); Miller v. Glenn Miller Prods., Inc., 454

14   F.3d 975, 989 n.6 (9th Cir. 2006) (noting "California's common-law right of publicity

15   protects an individual's name and likeness from appropriation for . . . commercial . . .

16   purposes"); see also In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 599-601

17   (9th Cir. 2020) (noting "state law can create interests that support standing in federal

18   courts").

19       To the extent D&B argues Batis has not alleged a sufficient injury because "she

20   has alleged no independent commercial value in her persona" (see Def.'s Mot. at 8:2-3),

21   the Ninth Circuit has explained that "the appropriation of the identity of a relatively

22   unknown person . . . may itself create economic value in what was previously valueless,"

23   see Motschenbacher v. R. J. Reynolds Tobacco Co., 498 F.2d 821, 825 n.11 (9th Cir.

24   1974), and here, Batis alleges D&B's "exploitation" of her persona "for commercial gain"

25   demonstrates its "commercial value" (see Compl. ¶ 13).  Such allegation is sufficient to

26   establish an injury in fact for purposes of Article III standing.  See Callahan, 2021 WL

27   5050079, at *14 (noting "[i]f a defendant uses a plaintiff's name and/or likeness to

28   advertise, then it can reasonably be inferred that the name and/or likeness has some

1    economic value, even if small").  Further, contrary to D&B's assertion that an allegation of

2    Batis's personal endorsement is needed (see Def.'s Mot. at 20:21-22), "California law has

3    not imposed any requirement that the unauthorized use or publication of a person's name

4    . . . be suggestive of an indorsement or association with the injured person," see

5    Eastwood v. Superior Ct., 149 Cal. App. 3d 409, 418 (1983); see also Callahan, 2021 WL

6    5050079, at *16.

7        Second, Batis "alleges injury in the form of D&B's unjust profits from its

8    unauthorized use of her persona."  (See Pl.'s Opp'n, at 18:15-16; see also Compl. ¶¶ 23,

9    47.)  Contrary to D&B's argument that a plaintiff, to establish injury in fact, "must do more

10   than point to the dollars in a defendant's pocket" and "must sufficient[ly] allege that in the

11   process he lost dollars of his own" (see Def.'s Mot. at 19:21-23 (alteration in original)

12   (citing In re Google, Inc. Priv. Pol'y Litig., 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3,

13   2013))), "California law," as recent Ninth Circuit authority explained, "recognizes a right to

14   disgorgement of profits resulting from unjust enrichment, even where an individual has

15   not suffered a corresponding loss," see In re Facebook, 956 F.3d at 599.  In light thereof,

16   "unjust enrichment" resulting from the "unauthorized use of [plaintiffs'] information for

17   profit" constitutes a harm recognized at common law sufficient to "support standing in

18   federal courts."  See In re Facebook, 956 F.3d at 599-601.

19       Third, Batis alleges "invasion of [her] privacy rights."  (See Compl. ¶¶ 23, 47.)

20   "[F]our separate torts are included within the broader designation of invasion of privacy,"

21   see Virgil v. Time, Inc., 527 F.2d 1122, 1125 (9th Cir. 1975), namely, "(1) intrusion into

22   private matters; (2) public disclosure of private facts; (3) publicity placing a person in a

23   false light; and (4) misappropriation of a person's name or likeness," see Moreno v.

24   Hanford Sentinel, Inc., 172 Cal. App. 4th 1125, 1129 (2009).  Specifically, Batis, relying

25   on the fourth of the above-listed torts, "alleges injury from D&B's denial of her right to

26   control the commercial use of her name and persona" (see Pl.'s Opp'n, at 21:9-10), a

27   "harm" recognized at common law, see In re Facebook, 956 F.3d at 598 (noting

28   "violations of the right to privacy have long been actionable at common law"; further

6

1  noting "right to privacy encompasses the individual's control of information concerning his

2  or her person") (internal quotations, citations, and alterations omitted).[4]

3      Fourth, Batis alleges "harm to [her] peace of mind" (see Compl. ¶ 23) and "mental

4  injury" (see Compl. ¶ 48).  "A plaintiff's mental injury from the non-consensual use of her

5  likeness can be a concrete injury sufficient to confer Article III standing."  See Martinez v.

6  ZoomInfo Techs. Inc., 2022 WL 1078630, at *4 (W.D. Wash. Apr. 11, 2022); see also

7  Motschenbacher, 498 F.2d at 824 (noting "injury suffered from an appropriation of the

8  attributes of one's identity may be mental and subjective") (internal quotation and citation

9  omitted).

10     In sum, Batis has established her alleged injuries are the sort of harms

11  "traditionally recognized as providing a basis for a lawsuit in American courts."  See

12  TransUnion, 141 S. Ct. at 2204.

13     Accordingly, D&B's motion to dismiss pursuant to Rule 12(b)(1) will be denied.

14  **III.   MOTION TO DISMISS – RULE 12(b)(6)**

15     **A.  Legal Standard**

16     Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal

17  theory or the absence of sufficient facts alleged under a cognizable legal theory."  See

18  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2),

19  however, "requires only 'a short and plain statement of the claim showing that the pleader

20  is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

21  (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6)

22  motion to dismiss does not need detailed factual allegations."  See id.  Nonetheless, "a

23  plaintiff's obligation to provide the grounds of his entitlement to relief requires more than

24  . . . a formulaic recitation of the elements of a cause of action."  See id. (internal

25

26     [4] The cases on which D&B relies address public disclosure of private facts (see
27  Def.'s Mot. at 18:20-19:9 (citing Virgil, 527 F.2d at 1129; Moreno, 172 Cal. App. 4th at
   1130; Sipple v. Chronicle Publ'g Co., 154 Cal. App. 3d 1040, 1047 (1984))), a "separate
28  tort[]," see Virgil, 527 F.2d at 1125.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   quotation, citation, and alteration omitted).

2      In analyzing a motion to dismiss, a district court must accept as true all material

3   allegations in the complaint and construe them in the light most favorable to the

4   nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

5   survive a motion to dismiss," however, "a complaint must contain sufficient factual

6   material, accepted as true, to 'state a claim to relief that is plausible on its face.'"

7   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual

8   allegations must be enough to raise a right to relief above the speculative level,"

9   Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion

10   couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and

11   citation omitted).

12      **B.  Discussion**

13      D&B moves to dismiss pursuant to Rule 12(b)(6) on the asserted ground that all of

14   Batis's claims "fail under state law" (see Def.'s Mot. at 14:17), and, in addition, that

15   "[p]laintiff's publicity and misappropriation claims are barred by the First Amendment"

16   (see id. at 8:11-12).  The Court considers below each such ground in turn.

17      **1.  State Law**

18      As discussed above, "California has long recognized a common law right of

19   privacy for the protection of a person's name and likeness against appropriation by others

20   for their advantage."  See Newcombe v. Adolf Coors Co., 157 F.3d 686, 691 (9th Cir.

21   1998).  "The right to be protected against such appropriation[] is also referred to as the

22   'right of publicity.'"  See Abdul-Jabbar v. Gen. Motors Corp., 85 F.3d 407, 413 (9th Cir.

23   1996) (citation omitted).  To state a common law cause of action for misappropriation, a

24   plaintiff must establish: "(1) the defendant's use of the plaintiff's identity; (2) the

25   appropriation of plaintiff's name or likeness to defendant's advantage, commercially or

26   otherwise; (3) lack of consent; and (4) resulting injury."  See Newcombe, 157 F.3d at 692

27   (internal quotation and citation omitted).

28      This common law cause of action "has been complemented by the enactment

8

United States District Court
Northern District of California

1  of Cal. Civ. Code § 3344," California's right of publicity statute.  See Newcombe, 157

2  F.3d at 692 (explaining § 3344 "neither replaces nor codifies the common law cause of

3  action"; noting § 3344(g) "specifically provides that the statutory remedies of the section

4  are cumulative and in addition to any others provided by law").  Section 3344, provides, in

5  relevant part: "Any person who knowingly uses another's name, voice, signature,

6  photograph, or likeness, in any manner . . . for purposes of advertising . . . without such

7  person's prior consent . . . shall be liable for any damages sustained by the person."

8  See Cal. Civ. Code § 3344(a).  To state a cause of action under § 3344, a plaintiff must

9  plead the common law elements and additionally establish: "(1) a knowing use; (2) for

10  purposes of advertising, and (3) a direct connection between the use and the commercial

11  purpose."  See Newcombe, 157 F.3d at 692 (internal quotation and citation omitted).

12         "Under both the common law cause of action and the statutory cause of action,"

13  however, "no cause of action will lie for the publication of matters in the public interest,

14  which rests on the right of the public to know and the freedom of the press to tell it."

15  See Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001) (internal

16  quotation and citation omitted); see also Cal. Civ. Code § 3344(d) (exempting from

17  liability "use of a name . . . or likeness in connection with . . . public affairs"); Scott v.

18  Citizen Watch Co. of Am., Inc., 2018 WL 1626773, at *5 (N.D. Cal. Apr. 4, 2018) (noting

19  courts that consider the "public interest" and "public affairs" exceptions "consistently

20  either analyze them together or reach the same outcome on both") (collecting cases).

21  The public interest exception "extends 'to almost all reporting of recent events,' as well as

22  to publications about 'people who, by their accomplishments, mode of living, professional

23  standing or calling, create a legitimate and widespread attention to their activities.'"  See

24  Downing, 265 F.3d at 1001 (quoting Eastwood, 149 Cal. App. 3d at 422).

25         In support of its motion, D&B argues that its "use of [p]laintiff's information falls

26  within the public interest/public affairs exceptions to liability for right of publicity and

27  misappropriation claims."  (See Def.'s Mot. at 14:20-21.)  Specifically, D&B argues, "[t]he

28  information in Hoovers is useful business information of public interest" and "economic

9

importance" that "affects marketing, solicitations, and business-to-business purchases, and thereby facilities trade and commerce."  (See id. at 16:13-15.)  Even information "of public interest," however, "may be [a] subject[] of § 3344 liability when published for commercial rather than journalistic purposes."  See Fraley v. Facebook, Inc., 830 F. Supp. 2d 785, 792, 805 (N.D. Cal. 2011) (finding "even if the underlying actions taken by [p]laintiffs [we]re newsworthy, . . . [defendant]'s commercial use of those actions remove[d] them from the scope of § 3344(d)'s newsworthy privilege") (emphasis in original); see also Abdul-Jabbar, 85 F.3d at 416 (holding use of plaintiff's newsworthy information "not protected by section 3344(d)" where defendant "used the information in the context of an . . . advertisement").

Here, contrary to D&B's argument, Batis has not challenged her inclusion in the D&B Hoovers database; she challenges the use of her name and likeness to advertise subscriptions to the D&B Hoovers database.  Courts have held such commercial use falls outside the public interest/public affairs exception.  See Martinez, 2022 WL 1078630, at *1, *6 (finding, where defendant's website "display[ed] 'teaser profiles' showing some information about [plaintiff] and offering 'full access' in exchange for a fee-based subscription," use "of [plaintiff]'s person to advertise subscriptions to [defendant]'s platform d[id] not fit within the public interest exception"); Sessa, 561 F. Supp. 3d at 1030-31 (finding "[e]ven if [p]laintiffs [we]re of interest to the limited public searching for [p]laintiffs' information, [defendant]'s use of their likenesses in connection with advertising" was "commercial" and thus "not within the scope of 'public affairs'"; rejecting defendant's "attempt[] to expand the understanding of public affairs from reporting on events and public persons to anything that may interest private individuals"); Lukis v. Whitepages Inc., 454 F. Supp. 3d 746, 760, 762 (N.D. Ill. 2020) (rejecting "public affairs" argument; noting "complaint allege[d] that [defendant] used [plaintiff]'s identity—reflected by her name, age range, and city of domicile, along with the names of some of her relatives—in free previews used to advertise, promote, and offer for sale its monthly subscription services").

10

1    Although D&B argues the above-cited cases are distinguishable in that, according

2    to D&B, they "involved uses of the plaintiffs' *personal* information, not purely *business*

3    information" (see Reply in Supp. of Def.'s Mot. ("Def.'s Reply") at 14:26-27, Dkt. No. 25

4    (emphases in original)), D&B does not explain why publishing the "business information"

5    alleged here, e.g., Batis's name, contact information, job title, and work history, would not

6    support a cause of action, for which, as noted, the use of an individual's "name or

7    likeness" is sufficient, nor has D&B cited any authority to support a finding that non-

8    business, personal information is a necessary component of a "name or likeness."

9    For the reasons set forth above, D&B fails to establish that Batis's common law

10   misappropriation claim and statutory right of publicity claim fail under state law.

11   Further, D&B, in arguing Batis's "UCL claim . . . must be dismissed on the same

12   grounds as her other claims," while providing no additional argument as to the UCL claim

13   (see Def.'s Mot. at 17), likewise fails to establish that Batis's UCL claim fails under state

14   law.

15                              **2.  First Amendment**

16   D&B contends "[p]laintiff's publicity and misappropriation claims are barred by the

17   First Amendment."  (See Def.'s Mot. at 8:11-12.)  In particular, D&B argues, "[D&B]

18   Hoovers is a publication that is fully protected by the First Amendment," and as a result,

19   "so is D&B's free trial of that publication."  (See id. at 13:12-13.)

20   The Ninth Circuit has held "publications like yellow pages directories and

21   newspapers receive full First Amendment protection" see Dex Media W., Inc. v. City of

22   Seattle, 696 F.3d 952, 962 (9th Cir. 2012), as do "telephone listings and community

23   information," see id. at 957.  Here, D&B Hoovers, the publication underlying the

24   advertisement discussed above, is similar to such protected publications.  (See Compl.

25   ¶ 11 (alleging D&B Hoovers contains "profiles of hundreds of millions of individuals [and]

26   information about millions of companies").)  Consequently, the Court finds it "receive[s]

27   full First Amendment protection," see Dex Media, 696 F.3d at 962, and Batis does not

28   appear to argue to the contrary (see Pl.'s Opp'n, at 2:21-24 (stating "[w]ere D&B to cease

United States District Court
Northern District of California

offering access to [her] profile as part of a promotional free trial and remove the 'Download' button on her profile that generates a pop-up prompting a user to purchase a subscription, D&B would comply with the law") (emphasis in original)).

Although according to D&B's argument, "[i]t is well established that advertisements promoting constitutionally-protected works are protected to the same extent as the underlying publication itself" (see Def.'s Reply at 6:24-7:2), the Ninth Circuit has expressly declined to adopt a "categorical rule" that "truthful advertisements for noncommercial speech always share the identical level of First Amendment protection as the underlying speech," see Charles v. City of Los Angeles, 697 F.3d 1146, 1155 (9th Cir. 2012). Rather, the Ninth Circuit has held "such a rule may apply" in "the circumscribed context of specific tort actions," explaining that "to ensure that First Amendment-protected expression is not unduly chilled by the threat of tort actions that would otherwise prevent the truthful promotion of protected expressive works, under certain circumstances [it] extend[s] an advertised work's First Amendment protection to advertisements for the work." See id. at 1153 (emphasis added).

Here, D&B, citing De Havilland v. FX Networks, LLC, 21 Cal. App. 5th 845, 860 (2018) (holding film at issue therein was "expressive work," and, as such, was "fully protected by the First Amendment, which safeguards the storytellers and artists who take the raw materials of life—including the stories of real individuals, ordinary or extraordinary—and transform them into art, be it articles, books, movies, or plays"), contends D&B Hoovers is a "transformative, expressive work" in that it "takes the 'raw materials' of certain aspects of persona (business contact information, employer, what industry they work in, etc.) and 'adds something new'" (see Def.'s Mot. at 12:20, 12:27-28). In that regard, D&B asserts, it "does not merely publish a static listing of a person's business contact information," but rather "curates factual information about businesses, and publishes that information dynamically in response to search term queries that organize and reflect the data in innumerable different ways." (See Def.'s Mot. at 12:28-13:4.)

United States District Court
Northern District of California

1   In her opposition, Batis "disputes that D&B's profiles are 'transformative' or

2   'expressive'" (see Pl.'s Opp'n, at 15:19), and the Complaint contains no facts describing

3   the assertedly "innumerable different ways" data is displayed, or any other facts from

4   which such a determination can be made.[5]   Given that D&B's First Amendment argument

5   constitutes an affirmative defense, see Hilton v. Hallmark Cards, 599 F.3d 894, 909 (9th

6   Cir. 2010) (describing transformative use defense as "affirmative defense"), and given

7   that a court "may only grant a motion to dismiss a claim on the basis of an affirmative

8   defense if, from the facts alleged in the complaint, there is no dispute that the affirmative

9   defense would bar the claim," see Sessa, 561 F. Supp. 3d at 1026–27, the Court finds

10   dismissal under Rule 12(b)(6) based on First Amendment immunity is improper at this

11   stage of the proceedings, see ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004

12   (9th Cir. 2014) (holding "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative

13   defense is proper only if the defendant shows some obvious bar to securing relief on the

14   face of the complaint").

15   Accordingly, for all the reasons discussed above, D&B's motion to dismiss

16   pursuant to Rule 12(b)(6) will be denied.

17   **IV.   MOTION TO STRIKE – ANTI-SLAPP**

18   **A.  Legal Standard**

19   Section 425.16 of the California Code of Civil Procedure, California's "anti-SLAPP"

20   statute,[6] is intended "to protect individuals from meritless, harassing lawsuits whose

21   _____

22   [5] The cases on which D&B relies, wherein courts extended full First Amendment
protection to advertisements, concerned underlying "expressive" works that appear
readily distinguishable from the D&B Hoovers publication.  See De Havilland, 21 Cal.

23   App. 5th at 850 ("docudrama about film stars Bette Davis and Joan Crawford"); Cher v. F.
Int'l, Ltd., 692 F.2d 634, 636, 638 (9th Cir. 1982) (magazine's "publication of . . .

24   interview" of "well-known entertainer" Cher); Daly v. Viacom, Inc., 238 F. Supp. 2d 1118,
1123 (N.D. Cal. 2002) ("television program" was "an expressive work protected by the

25   First Amendment"); Guglielmi v. Spelling-Goldberg Prods., 25 Cal. 3d 860, 862 (1979)
("fictional film" about "world-renowned silent motion picture actor"); Int-Elect Eng'g, Inc. v.

26   Clinton Harley Corp., 1993 WL 557639, at *1 (N.D. Cal. June 24, 1993) ("paint[ing of] a
billowing U.S. flag on the sides of a motorcycle"); Page v. Something Weird Video, 960 F.

27   Supp. 1438, 1444 (C.D. Cal. 1996) ("home video cassettes for two films").

28   [6] "Anti-SLAPP" is an acronym for "Anti-Strategic Lawsuit Against Public

1    purpose is to chill protected expression."  See Metabolife, 264 F.3d at 837 n.7.  The

2    statute, in relevant part, provides:

3        A cause of action against a person arising from any act of that person in
         furtherance of the person's right of petition or free speech under the United

4        States Constitution or the California Constitution in connection with a public
         issue shall be subject to a special motion to strike, unless the court

5        determines that the plaintiff has established that there is a probability that
         the plaintiff will prevail on the claim.

6

7    See Cal. Civ. Proc. Code § 425.16(b)(1).

8        To prevail on an anti-SLAPP motion, the defendant "must first make a prima facie

9    showing that the plaintiff's suit arises from an act by the defendant made in connection

10   with a public issue in furtherance of the defendant's right to free speech under the United

11   States or California Constitution."  See Sarver v. Chartier, 813 F.3d 891, 901 (9th Cir.

12   2016) (internal quotation and citation omitted).  "The burden then shifts to the plaintiff . . .

13   to establish a reasonable probability that it will prevail on its claim in order for that claim

14   to survive dismissal."  See Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir.

15   2013).

16       **B.  Discussion**

17       Under subsection 425.16(e), an "'act in furtherance of a person's right of petition or

18   free speech under the United States or California Constitution in connection with a public

19   issue' includes":

20       (1) any written or oral statement or writing made before a legislative,
         executive, or judicial proceeding, or any other official proceeding authorized

21       by law, (2) any written or oral statement or writing made in connection with
         an issue under consideration or review by a legislative, executive, or judicial

22       body, or any other official proceeding authorized by law, (3) any written or
         oral statement or writing made in a place open to the public or a public

23       forum in connection with an issue of public interest, or (4) any other conduct
         in furtherance of the exercise of the constitutional right of petition or the

24       constitutional right of free speech in connection with a public issue or an
         issue of public interest.

25

26   See Cal. Civ. Proc. Code § 425.16(e).  Here, D&B argues, "[p]laintiff's claims arise from

27   _____

28   Participation."  See Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 837 n.7 (9th Cir. 2001).

United States District Court
Northern District of California

United States District Court
Northern District of California

speech that falls under the third and fourth circumstances." (See Def.'s Mot. at 6:25-26.) The Court is not persuaded.

First, as discussed above, D&B has not demonstrated its advertisements are, as a matter of law, entitled to protection under the First Amendment. As also discussed, D&B's commercial use does not fall within the protection of the public interest exception to liability for misappropriation and right of publicity claims, which analysis has similar application for purposes of an anti-SLAPP motion. See Martinez, 2022 WL 1078630, at *6-7 (finding, where "speech at issue [wa]s commercial in nature and not protected speech," it "d[id] not fit within the public interest exception" for either right of publicity claim or anti-SLAPP motion); Camacho v. Control Grp. Media Co., LLC, 2022 WL 3093306, at *33 (S.D. Cal. July 18, 2022) (finding, where "information included in [d]efendants' advertisements [wa]s not an issue of public interest" for purposes of right of publicity claim, defendants' argument that such information constituted "protected speech" for purposes of anti-SLAPP statute was "unpersuasive"). Moreover, as set forth below, D&B has not made an adequate showing as to "a public issue or an issue of public interest." See Cal. Civ. Proc. Code § 425.16(e).

Although the Ninth Circuit has "construe[d] 'public issue or issue of public interest' . . . broadly," see Hilton, 599 F.3d at 906, such scope is not without limitation. In that regard, California courts have identified "three categories of public issues: (1) statements 'concern[ing] a person or entity in the public eye'; (2) 'conduct that could directly affect a large number of people beyond the direct participants'; (3) 'or a topic of widespread, public interest.'" See id. (alteration in original) (quoting Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., 105 Cal. App. 4th 913, 924 (2003)). In determining "what constitutes a matter of public interest," California courts also look to "whether the activity 'occurred in the context of an ongoing controversy, dispute or discussion,' or 'affected a community in a manner similar to that of a governmental entity.'" See FilmOn.com Inc. v. DoubleVerify Inc., 7 Cal. 5th 133, 145–46 (2019) (internal citations and alterations omitted).

15

1   Here, as noted, Batis challenges D&B's free trial publication of her "profile," which

2   is comprised of her "name, job title, place of work, and telephone number" (see Compl.

3   ¶ 33), as well as the "identities of her work colleagues and 'Triggers'" (see Compl. ¶ 35).

4   D&B argues this speech is "[b]usiness information," which, it asserts, is "of

5   legitimate public interest."  (See Def.'s Mot. at 6:26-27.)  Although the content of Batis's

6   profile arguably could be described as business information, "the assertion of a broad and

7   amorphous public interest is not sufficient," see Weinberg v. Feisel, 110 Cal. App. 4th

8   1122, 1132 (2003), and the profiles comprising the information alleged here are "too

9   tenuously tethered to the issues of public interest they implicate . . . to merit protection

10   under" the anti-SLAPP statute, see FilmOn.com, 7 Cal. 5th at 140; see also Weinberg,

11   110 Cal. App. 4th at 1134 (denying anti-SLAPP motion in defamation case where

12   defendant had "accused plaintiff of criminal activity" and there was no evidence "plaintiff

13   [wa]s a public figure or that he ha[d] thrust himself into any public issue"; finding "criminal

14   activity is" not "always a matter of public interest"); cf. Integrated Healthcare Holdings, Inc.

15   v. Fitzgibbons, 140 Cal. App. 4th 515, 523 (2006) (finding issue of public interest where

16   plaintiff's "acquisition and operation of four [county] hospitals" was subject of state and

17   county hearings and had been discussed in numerous articles "focus[ing] on [plaintiff]'s

18   financial ability to successfully operate the hospitals" as well as "potential harm to the

19   public should [plaintiff] fail"); Pub. Employees' Ret. Sys. v. Moody's Invs. Serv., Inc., 226

20   Cal. App. 4th 643, 660 (2014) (finding "public issue/issue of public interest requirement . .

21   . satisfied" where defendant's publications "concerned an ongoing discussion regarding

22   the financial well-being of a significant investment opportunity").

23   Consequently, the Court finds D&B has failed to make a threshold showing that

24   Batis's claims arise from protected activity.  "Failure to meet this initial prong renders the

25   anti-SLAPP statute inapplicable, thereby making unnecessary any determination under

26   the second prong."  See Pub. Employees, 226 Cal. App. 4th at 658.

27   Accordingly, D&B's motion to strike pursuant to California's anti-SLAPP statute will

28   be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

For the reasons set forth above, D&B's motion to strike, and, in the alternative, to dismiss the Complaint is hereby DENIED.

**IT IS SO ORDERED.**

Dated: February 9, 2023

MAXINE M. CHESNEY
United States District Judge