FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ODETTE R. BATIS, on behalf of herself and all others similarly situated,

   *Plaintiff-Appellee*,

v.

DUN & BRADSTREET HOLDINGS, INC.,

   *Defendant-Appellant*.

No. 23-15260

D.C. No. 3:22-cv-01924-MMC

OPINION

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted January 9, 2024
San Francisco, California

Filed July 8, 2024

Before: Eugene E. Siler,[*] Richard R. Clifton, and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Clifton

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### California Anti-SLAPP Statute

The panel affirmed the district court's denial of a motion by Dun & Bradstreet Holdings, Inc. ("D&B") to strike Odette Batis's putative class action under section 425.16 of California's anti-SLAPP statute.

Batis challenged the use of her name and contact information in the free trial for the D&B Hoovers database, a searchable business-to-business database. She alleged that the use of that information without her permission violated her right of publicity under California law.

The panel held that Batis's lawsuit was immune from an anti-SLAPP motion under the public interest exemption, Cal. Civ. Proc. Code § 425.17(b). Because Batis's lawsuit sought to enforce an important right under California law and she did not seek any relief different from the rest of the class, her lawsuit fell within that exemption.

### COUNSEL

Ben R. Osborn (argued), Law Office of Benjamin R. Osborn, Brooklyn, New York; Marie N. Appel and Michael F. Ram, Morgan & Morgan, San Francisco, California; for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Michael R. O'Donnell (argued), and Michael P. O'Mullan, Riker Danzig LLP, Morristown, New Jersey; Ashley I. Kissinger, Ballard Spahr LLP, Denver, Colorado; Elizabeth L. Schilken, Ballard Spahr LLP, Los Angeles, California; Emmy Parsons, Ballard Spahr LLP, Washington, D.C.; for Defendant-Appellant.

Rebecca Tushnet, Harvard University Law School; Cambridge, Massachusetts, for Amicus Curiae Intellectual Property and First Amendment Law Professors.

## OPINION

CLIFTON, Circuit Judge:

Plaintiff-Appellee Odette R. Batis brought a putative class action against Dun & Bradstreet Holdings, Inc. ("D&B"), challenging the use of her name and contact information in the free trial for the D&B Hoovers database. Batis alleges that the use of that information without her permission violates her right of publicity under California law.

D&B filed a motion to strike under section 425.16 of California's anti-SLAPP statute, arguing that Batis's claims "arise from D&B's acts in furtherance of the right of free speech." The district court denied the motion on the merits, holding that D&B had "failed to make a threshold showing that Batis's claims arise from protected activity."

We conclude that Batis's lawsuit is exempt from anti-SLAPP motions under California law. The anti-SLAPP statute does not apply to any lawsuits brought "solely in the public interest or on behalf of the general public." Cal. Civ.

Proc. Code § 425.17(b). As Batis's lawsuit seeks to enforce an important right under California law and she does not seek any relief different from the rest of the class, her lawsuit falls within that exemption. We therefore affirm the denial of D&B's anti-SLAPP motion without reaching the grounds on which the district court relied.

**I.   Background**

D&B operates D&B Hoovers, a searchable business-to-business database that contains information about businesses and other organizations across the United States. The database also contains professional contact information for the millions of individuals who work at the profiled entities. Anyone who searches the name of an individual professional, either through a search engine or on the D&B Hoovers database, can access a profile that contains some of the individual's contact information alongside messages informing the prospective customer they must purchase a subscription to access the remainder of that information. Plaintiffs allege that subscriptions cost more than $10,000 per year, but individuals can sign up for a free trial of the service, during which they continue to see messages alongside profiles suggesting the upgrade to a full subscription.

Batis is a librarian whose professional contact information is included in the D&B Hoovers database and is accessible during the free trial. Batis filed a putative class action against D&B on March 25, 2022, alleging that its system uses the names of her and other California residents without their consent to promote subscriptions to D&B Hoovers. She asserts that this commercial use of her name violates California's right of publicity and unfair competition laws and constitutes tortious misappropriation

of her name and likeness. Batis seeks a declaration that D&B has infringed on her state-law privacy and intellectual property rights, injunctive relief, restitution, and damages.

Based on California's anti-SLAPP statute, D&B filed a motion to strike, arguing that Batis's claims "arise from D&B's acts in furtherance of the right of free speech." In the alternative, D&B moved to dismiss Batis's lawsuit under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. The district court denied all of D&B's motions on the merits, holding that Batis had standing to sue and that D&B had not established that Batis's lawsuit targeted protected speech.

After D&B appealed the denial of its motion to strike,[1] we affirmed in a memorandum disposition, holding that our court's decision in *Martinez v. ZoomInfo Technologies, Inc.*, 82 F.4th 785 (9th Cir. 2023), mandated the conclusion that Batis's lawsuit is exempted from the anti-SLAPP statute under section 425.17(b). Our court subsequently vacated the *Martinez* opinion and ordered that case to be reheard en banc.

Before that rehearing could take place, the parties in *Martinez* reached a tentative settlement agreement. After our court was informed, the scheduled oral argument before the

---

[1] While the parties dispute whether we have jurisdiction to hear this appeal, we are bound by existing precedent stating that the denial of an anti-SLAPP motion is immediately appealable under the collateral order doctrine. *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003); *Langer v. Kiser*, 57 F.4th 1085, 1104 (9th Cir. 2023). We take no position on Batis's request that our court revisit that precedent. Batis separately notes that the denial of an anti-SLAPP motion is not immediately appealable when the district court relies on a statutory exemption, Cal. Civ. Proc. Code § 425.17(e), but the district court below decided D&B's motion on the merits, *see* Cal. Civ. Proc. Code § 425.16(b).

Case 3:22-cv-01924-MMC   Document 62   Filed 07/08/24   Page 6 of 15

6         BATIS V. DUN & BRADSTREET HOLDINGS, INC.

en banc panel was taken off calendar and the parties in that case were ordered to provide status reports on the progress of the settlement. Because *Martinez*, like this case, involved a putative class action, the settlement process requires more than the agreement of the parties—notably, review and approval by the district court where the class action is pending. In their first status report, the parties advised the court that they had executed a definitive agreement and would proceed to seek approval by the district court, a process likely to take months.

Because the *Martinez* precedent on which our memorandum disposition had relied has been vacated, we withdrew our prior disposition. We now consider the relevant issues directly.

## II. Discussion

We review de novo the denial of an anti-SLAPP motion, *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017), "accept[ing] plaintiff's submissions as true and consider[ing] only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law," *Park v. Bd. of Trustees of Cal. State Univ.*, 393 P.3d 905, 911 (Cal. 2017). We conclude that the anti-SLAPP statute does not authorize a motion to strike against Batis's lawsuit.

### A. Public Interest Exemption

California's anti-SLAPP statute protects against "strategic lawsuits against public participation"—"'lawsuits brought primarily to chill' the exercise of speech and petition rights." *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1160 (Cal. 2019) (quoting Cal. Civ. Proc. Code § 425.16(a)). The statute "was enacted to protect nonprofit

corporations and common citizens 'from large corporate entities and trade associations' in petitioning government." *Id.* (internal quotation marks omitted).

When assessing a motion to strike brought under the statute, "[b]efore engaging in [the merits] analysis, a court must consider any claims by the plaintiff that a statutory exemption contained in section 425.17 applies." *Takhar v. People ex rel. Feather River Air Quality Mgmt. Dist.*, 237 Cal. Rptr. 3d 759, 766 (Ct. App. 2018) (internal quotation marks omitted). One such exemption applies to "any action brought solely in the public interest or on behalf of the general public" in which (1) the plaintiff does not seek relief different from the rest of any class of which she is a member, (2) the action would enforce an "important right affecting the public interest," and (3) "[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff." Cal. Civ. Proc. Code § 425.17(b). Batis asserts that her lawsuit meets these criteria and is therefore immune from anti-SLAPP motions under this "public interest exemption."[2]

---

[2] D&B correctly notes that Batis arguably waived any argument under section 425.17(b) by failing to discuss that section below. Nevertheless, this court has discretion to excuse any such waiver in exceptional circumstances. *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000) ("One 'exceptional circumstance' is when the issue is one of law and either does not depend on the factual record, or the record has been fully developed."). This issue is one of law that primarily involves assessing the face of Batis's complaint. The only other necessary facts involve the degree to which the D&B Hoovers database features protected speech, a question which was at the center of D&B's briefing and factual development below. We therefore excuse Batis's waiver of this issue. *Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir. 1986).

### 1. Relief Different from the Class

D&B's primary counterargument is that because Batis seeks damages that may require an individualized determination, she is seeking "personal relief" different from the rest of the class. That interpretation of the statute's requirements is overly restrictive. California courts are clear that plaintiffs can still invoke the public interest exemption even if their lawsuit seeks monetary relief. In *Strathmann*, the court held that "[a] claim brought on behalf of the general public might include some kind of individual relief, in which case, it would have to be determined under section 425.17(b)(1) whether that relief is greater than or different from the relief sought for the general public." *People ex rel. Strathmann v. Acacia Rsch. Corp.*, 148 Cal. Rptr. 3d 361, 371 (Ct. App. 2012). While *Strathmann* involved a *qui tam* action, class actions can also invoke section 425.17(b). *See Ingels v. Westwood One Broad. Servs., Inc.*, 28 Cal. Rptr. 3d 933, 942, 1066 (Ct. App. 2005) (citing Sen. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003–2004 Reg. Sess.) as amended May 1, 2003, p. 13). In either type of case, the fact that a litigant may receive money from a suit does not inherently bar the application of the public interest exemption.

Instead, California courts have only barred plaintiffs from invoking the public interest exemption when they seek relief to which other class members would not be entitled on the face of the complaint. In *Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094, 1099 (Cal. 2008), the complaint sought certain relief that would solely advance its members' own interests, such as board seats for its members and the publication of an article espousing its own views. *Id.* The California Supreme Court noted that the bar on "any personal relief" prohibits seeking "a more narrow

advantage for a particular plaintiff," and therefore held that the plaintiff impermissibly sought "relief greater than or different from the relief sought for the general public." *Id.* at 1098 (quoting Cal. Civ. Proc. Code § 425.17(b)). In other cases where lower courts held that the public interest exemption did not apply, the plaintiffs sought damages for themselves that they did not seek for other members of the putative class. *Ingels*, 28 Cal. Rptr. 3d at 942-44; *Thayer v. Kabateck Brown Kellner LLP*, 143 Cal. Rptr. 3d 17, 29 (Ct. App. 2012), *as modified* (June 22, 2012) ("It is clear that Thayer seeks relief much greater than the relief sought for the purported class.").

In assessing whether a putative class action falls under that exemption, the question is therefore whether the complaint pursues the same categories of relief for all class members. It matters not whether all class members are likely to ultimately establish entitlement to all forms of requested relief, as long as nothing in the complaint inherently precludes them from doing so.

Here, Batis has requested all relief on behalf of all members of the alleged class. For instance, while D&B notes that Batis seeks "[e]motional distress damages," which it asserts "are highly individualized," her complaint clearly seeks such damages on behalf of both "Plaintiff *and the Class*." While D&B may find it implausible that the whole putative class experienced emotional distress, Batis's complaint does not expressly preclude any subset of the class from seeking such relief. If the putative class is ultimately certified—a question on which we take no position here— any class member will have the opportunity to establish entitlement to any forms of relief for which D&B is held liable.

### 2. Important Right Affecting the Public Interest

The second prong of the public interest exemption asks whether a lawsuit seeks to "enforce an important right affecting the public interest" and would "confer a significant benefit" on the general public. Cal. Civ. Proc. Code § 425.17(b)(2). In assessing that question, courts examine the "complaint to determine whether [the] lawsuit is of the kind that seeks to vindicate public policy goals." *Tourgeman v. Nelson & Kennard*, 166 Cal. Rptr. 3d 729, 743 (Ct. App. 2014).

Batis's lawsuit clearly intersects with California's public policy goal of protecting an individual's right to control the use of his or her persona. When California was becoming the center of the entertainment industry a century ago, its courts enshrined a state constitutional right to privacy in a case authorizing a tort action for the use of one's name and biography without permission. *Melvin v. Reid*, 297 P. 91, 93 (Cal. Ct. App. 1931). Since then, California courts have continued to underscore the state's public policy commitment to protecting its citizens' property and privacy rights, confirming that the unauthorized use of a person's name for commercial exploitation is actionable even when targeted at private citizens with no public reputation. *Stilson v. Reader's Dig. Ass'n, Inc.*, 104 Cal. Rptr. 581, 582 (Ct. App. 1972); *see also Fairfield v. Am. Photocopy Equip. Co.*, 291 P.2d 194, 197 (Cal. Ct. App. 1955) (condemning right of publicity exploitation as "one of the most flagrant and common means of invasion of privacy"). The California public endorsed the state's commitment to privacy in a 1972 ballot measure that explicitly added privacy to the state's constitutional rights. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 15 (1994); *see also* Cal. Const. Art. I, § 1.

This tradition demonstrates that California considers the right to control one's name and likeness to be an important right affecting the public interest. Batis's lawsuit, on the face of the complaint, seeks to enforce this deeply engrained right. That is sufficient to meet the second prong of the public interest exemption, whether or not the conduct she challenges constitutes a particularly egregious violation of that right.

3. Necessity of Private Enforcement

Finally, Batis also satisfies the third criterion of the public interest exemption because private enforcement is both necessary and disproportionately burdensome. *See* Cal. Civ. Proc. Code § 425.17(b)(3). California courts have held that if no public entity has sought to enforce the right plaintiff seeks to vindicate in the lawsuit, "[t]his fact alone is a sufficient basis to conclude the action is 'necessary,' within the meaning of the public interest exception." *Inland Oversight Comm. v. Cnty. of San Bernardino*, 190 Cal. Rptr. 3d 884, 887–88 (Ct. App. 2015); *see also Tourgeman*, 166 Cal. Rptr. 3d at 744 (citing cases). There is no indication that a public entity has brought a similar action against D&B.

Meanwhile, a case is disproportionately burdensome if "the cost of [Batis's] legal victory transcends [her] personal interest." *Tourgeman*, 166 Cal. Rptr. 3d at 744 (quoting *Blanchard v. DIRECTV, Inc.*, 20 Cal. Rptr. 3d 385, 393 (Ct. App. 2004)). As Batis may struggle to demonstrate the economic value of her name or likeness, she may recover only the minimum statutory damages of $750, which would not cover the cost of litigating this action. *See* Cal. Civ. Code § 3344(a). If her class action is successful, Batis's personal recovery would be dwarfed by the total recovery for the

putative class, which she alleges may number in the millions.

### B. Section 425.17(d)

D&B argues that section 425.17(d) precludes application of the public interest exemption to Batis's lawsuit.³ In its briefing, it relies on subdivision (d)(1)'s protection of any person connected with "a newspaper, magazine, *or other periodical publication*," *see* Cal. Civ. Proc. Code § 425.17(d)(1); Cal. Const., Art. I § 2(b) (emphasis added), and subdivision (d)(2)'s protection of "any dramatic, literary, musical, political, or artistic work," Cal. Civ. Proc. Code § 425.17(d)(2). D&B asserts that the D&B Hoovers database should be considered both a "periodical publication" and a "literary . . . work." As both subdivisions refer to works that involve some form of artistic or

---

³ Section 425.17(d) provides, in relevant part, that subdivisions (b) and (c) do not apply to the following:

> (1) Any person enumerated in subdivision (b) of Section 2 of Article I of the California Constitution or Section 1070 of the Evidence Code, or any person engaged in the dissemination of ideas or expression in any book or academic journal, while engaged in the gathering, receiving, or processing of information for communication to the public.

> (2) Any action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation.

Cal. Civ. Proc. Code § 425.17(d)(1)-(2).

intellectual expression, D&B's arguments are unpersuasive.

As an initial note, section 425.17(d) evidently does not apply to all works that receive First Amendment protection. If it did, the public interest exemption would be read out of existence: any work that is allowed to invoke the anti-SLAPP statute in the first place could subsequently invoke section 425.17(d) to preclude the public interest exemption's application. Instead, that section identifies a few categories of works so important that protecting them from suit must override the important policy goals furthered by the public interest exemption. The question is whether D&B's database fits into any of those narrow categories—a question which turns on how one interprets the terms "periodical publication" and "literary."

To assess that issue, we turn to the well-established canon of statutory interpretation that "words should be understood by the company they keep." *Microsoft Corp. v. Comm'r*, 311 F.3d 1178, 1184 (9th Cir. 2002). Interpreting the term "literary" from that perspective, all the other terms in subdivision (d)(2)—dramatic, musical, political, artistic—evoke some form of *expression*. Similarly, in terms of what constitutes a "periodical publication," the other examples—newspapers and magazines—involve the dissemination of works of expression, from opinion pieces to in-depth investigations. Indeed, subdivision (d)(1) explicitly refers to any "person engaged in the dissemination of *ideas or expression*." Cal. Civ. Proc. Code § 425.17(d)(1) (emphasis added). The statutory examples in each provision underscore the notion that both are intended to protect works of expression, as they highlight a "book or academic journal," "a motion picture or television program," and "an article published in a newspaper or magazine of general

circulation." Cal. Civ. Proc. Code § 425.17(d)(1)-(2).[4] None of these examples gives any indication that a compendium of information, such as a telephone book, would be covered.[5] Both subdivisions must therefore be interpreted as referring to works that involve some form of expression.

Under such an interpretation, a database of professional contact information used to facilitate commercial transactions does not come within the ambit of section 425.17(d). D&B concedes that its "profiles are short and the vast majority are limited to basic business contact information." Publishing that basic information "in the context of comprehensive information about the city that employs [Batis]" does nothing to change the database's nature— additional "information" cannot transform a database into a work of *expression*. The fact that the D&B Hoovers database also happens to contain some "industry

---

[4] Even the modifier "of general circulation" cuts against D&B's position, given that the D&B Hoovers database is accessible to only a small subset of the population that is part of an institution that can afford a subscription. D&B notes legislative history stating that § 425.17(d)(2) also covers additional "important forms of protected speech." *Major v. Silna*, 36 Cal. Rptr. 3d 875, 884 (Ct. App. 2005). However, the cited passage goes on to define such "important forms" as a "newspaper, magazine, or other periodical publication," *id.*, and therefore does nothing to expand the reach of the subdivision beyond its text. Indeed, *Silna* itself involved the dissemination of a letter soliciting support for a political candidate, *id.* at 877—a work of political expression that clearly falls within the enumerated categories of subdivision (d)(2).

[5] While subdivision (d)(1) only applies to persons "while engaged in the gathering . . . of information," that provision merely adds an additional requirement that someone invoking the subdivision must establish, in addition to proving that they are either a "newspaper, magazine, or other periodical publication*"* or are "engaged in the dissemination of ideas or expression."

Case 3:22-cv-01924-MMC   Document 62   Filed 07/08/24   Page 15 of 15

BATIS V. DUN & BRADSTREET HOLDINGS, INC.                    15

news," the dissemination of which is not challenged in this case, is insufficient to render it a "literary work" as a whole, especially when D&B has not put forward any evidence about whether the "industry-level information" that it "provides" consists of original works of reporting or articles compiled from external sources.

## III.  Conclusion

As we conclude that Batis's lawsuit is immune from an anti-SLAPP motion under the public interest exemption, we affirm the denial of D&B's motion to strike. Each party shall bear its own costs on appeal.

**AFFIRMED.**